JOSE FLORES v. THE STATE.

No. 6209.   Decided May 4, 1921.

Rehearing denied June 15, 1921.

1.—Murder—Juvenile—Preliminary Affidavit—Age of Defendant—Burden of Proof.

Where an affidavit was made in the form suggested by the statute that defendant was a juvenile under the age of seventeen years at the time of the trial, the burden of proof is placed upon the accused, and the fact of his juvenility must be established to the satisfaction of the trial judge, and the evidence being conflicting, there was no reversible error in the judgment against defendant on this issue.

2.—Same—Newly Discovered Evidence—Reasonable Diligence—Self-Serving Declarations.

Where the alleged newly discovered evidence consisted of a statement by the defendant to the assistant county attorney with reference to his age before that fact became an issue in the case, the same would be self-serving and inadmissible; besides, this fact must have been known to defendant and his counsel before the instant trial.

3.—Same—Death Penalty—Age of Defendant—Charge of Court.

Where, upon trial of murder, the defendant urged the defense that he was under the age of seventeen years at the time of the commission of the offense, and that the death penalty could not be inflicted, the burden of such proof was upon defendant and the trial court having submitted a proper charge upon this phase of the case, there was no reversible error. Following Ake v. State, 6 Texas Crim. App., 399, and other cases.

4.—Juvenile—Age of Defendant—Sufficiency of the Evidence.

Where the question of the age of defendant at the time of the trial was fully submitted to the jury and by them considered in the light of all the testimony, and decided adversely to the defendant's contention, there was no reversible error.

5.—Same—Argument of Counsel—Practice in the Trial Court.

Where the point involved in the testimony that defendant had been convicted of robbery was its effect upon his credibility as a witness, and it not being controverted that he had been convicted of said offense, the inadvertent reference by State's counsel to same as having been committed with fire-arms, which reference was promptly corrected, is not reversible error.

6.—Same—Evidence—Res Gestae—Principals—Instrument Used.

Upon trial of murder there was no error in admitting testimony of the sheriff immediately after the killing and when deceased was in the throes of death, that he found a certain object, which was a sort of a bludgeon, incased in some rags behind a certain radiator near the scene of the homicide. This was part of the res gestae and also testimony bearing upon the question of principals; besides, similar testimony had been admitted already without objection.

7.—Same—Charge of Court—Principals—Act of Third Party.

Where, upon trial of murder, the overwhelming proof showed defendant's guilty participation in the homicide, there was no reversible error in the charge of the court wherein he authorized the jury to convict defendant of murder in the event they found that he aided in the killing, though the same was brought about by the act of someone else.

8.—Same—Sufficiency of the Evidence.

Where upon trial of murder inflicting the death penalty, the evidence showed that defendant was made a trustee by the man whom he slew, and that he took his life for no apparent reason except a desire to escape imprisonment, there was no reversible error and the conviction was sustained.

9.—Same—Bills of Exception—Argument of Counsel—Requested Charge.

Where the qualification of the trial judge of defendant's bill of exceptions showed that defendant had been guilty of robbery, State's counsel's argument in referring to this testimony which inadvertently used the expression that the robbery was committed with firearms, of which there was no support in the evidence, which was promptly corrected by the court, was not reversible error in the absence of a requested instruction.

Appeal from the District Court of Falls. Tried below before the Honorable Prentice Oltorf.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*J. A. Jones,* and *Robt. F. Higgins,* for appellant.—On question of argument of counsel: Glanges v. State, 220 S. W. Rep., 95; Grimes v. State, 141 id., 261; Brookreson v. State, 225 id., 375; McIntosh v. State, 213 id., 661; Beach v. State, 210 id., 540.

On question of admitting instrument in evidence: Eggleston v. State, 219 S. W. Rep., 199.

On question of court's charge on principals: Finks v. State, 209 S. W. Rep., 154; Bennett v. State, 64 id., 254.

*C. M. Cureton,* Attorney General, and *C. L. Stone,* Assistant Attorney General, for the State.—On question of newly discovered evidence: Gray v. State, 144 id., 284; Tuttle v. State, 6 Texas Crim. App., 561; Williams v. State, 7 id., 169; Leslie v. State, 49 S. W. Rep., 73.

On question of defendant's declarations as to age: Smith v. State, 164 S. W. Rep., 825; Wilkerson v. State, 57 id., 956.

On question of juvenile under age: Flores v. State, 227 S. W. Rep., 320; McLaren v. State, 85 Texas Crim. Rep., 31.

On question of *res gestae:* Christian v. State, 161 S. W. Rep., 101; Rainer v. State, 148 id., 735.

On question of argument of counsel: Mooney v. State, 176 S W. Rep., 58; Himmelfarb v. State, 174 id., 589.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Falls County of the murder of Oscar Sharp, and his punishment fixed at death.

Appellant was a Mexican, apparently without means of employing counsel, and the trial court is to be congratulated that in his selection of some one to represent the accused, he placed the case into the hands of men who have apparently taken every possible step to preserve and present the rights of appellant.

An affidavit was made in form as suggested by our statute, that appellant was a juvenile under the age of 17 years at the time of the trial. This was presented to the court below who heard evidence and rendered judgment against appellant on this issue, and this is complained of here. In the juvenile law, Art. 1195, et seq., Vernon's C. C. P., it appears that the burden of proving that he is under 17 years of age is placed on the accused, and that such facts must be established to the satisfaction of the trial judge. The evidence bearing on this issue in the instant case was conflicting. Appellant, his mother and sister, gave testimony in his behalf, while a number of witnesses who had been more or less familiar with him for a number of years. testified to facts and statements from which the conclusion could be reached that he was over 17 years of age at the time of said trial. His sister said that she was 21, and other witnesses testified that she had given her age at 24 years. She was married and had three children, one of whom was five years of age. This sister testified that while she did not know appellant's age, that she had two sisters born between herself and appellant. Appellant's mother in her testimony denied the fact that she had any children born between appellant and the sister mentioned, and stated that the only children she had ever borne were Frankie, age 24, Juana, age 21, and appellant, age 16. Many contradictory statements of each of the defense witnesses bearing on the question of appellant's age, were proven. The motive of said three witnesses for giving testimony favorable to appellant, was strong. We are not able to see from a careful examination of all the testimony, that the conclusion reached by the trial judge in this regard was erroneous.

Newly discovered evidence was a ground of appellant's motion for a new trial, which was controverted in this regard by the county attorney, and evidence was heard on the proposition that the matters referred to as newly discovered evidence, were known to appellant and his attorneys, or by the exercise of reasonable diligence could have been so known. Said newly discovered evidence consisted of a statement by appellant to the assistant county attorney, of his age, same having been made before that question became an issue in this case. Said statement would hardly have been admissible as original evidence in behalf of appellant, and would probably be held self-serving, and his right to prove same at all seems to be based on the ground that such statement was corroborative of appellant's statement of his

age made while on the witness stand, regarding which he was contradicted by testimony for the State. We might conclude this matter by saying appellant must have known that he had made such statement to the assistant county attorney, and, therefore, can not claim it to be newly discovered, but conceding to his ignorance, and to the fact that he was a foreigner and youthful, that its importance was not known to him, and the further fact that he had not made known to his counsel that he had made such statement, still we think it amply shown on the hearing before the court of the issue made by the replication of the county attorney, that said statement of the appellant to the assistant county attorney appeared in a statement of facts in another case of appellant, which statement of facts was present in court during the instant trial, and according to the evidence heard, was handled and used by both counsel for the State and the appellant. Appellant was questioned as to what he had said about his age on said former trial, on the occasion of the instant trial, and apparently references was had to his testimony on said former occasion as contained in said statement of facts which was present and used by counsel for the State and defense. No sufficient reason is shown why the matters contained in said statement of facts could not have been ascertained by appellant's counsel if they had cared to examine same with reference thereto.

Appellant and his mother testified on the instant trial that he was 16 years of age, and inasmuch as our statute, Article 35, Vernon's P. C., forbids the infliction of the death penalty upon one not 17 years of age at the time of the commission of the crime, the age of appellant at said time became an issue. In his charge the trial court told the jury unless the evidence led them to believe that appellant was 17 years of age at the time of the commission of the offense, if any, they could not inflict the death penalty; also that the burden of proof rested on appellant to show that at said time he had not arrived at said age. Complaint is made of said charge, and also the failure of the evidence to show that appellant was 17 years old at the time of said homicide. It seems to have been the uniform holding of this court that the burden of proof on this issue, is on the accused. Ake v. State, 6 Texas Crim. App., 399; Ellis v. State, 30 Texas Crim. App., 601; Wilcox v. State, 33 Texas Crim. Rep., 392; Williams v. State, 77 Texas Crim. Rep., 252; 177 S. W. Rep., 365. The trial court was correct in his charge in placing the burden of proof upon the defendant to establish his non-age.

We have to some extent discussed the question of appellant's age as involved in his effort to have the case transferred to the juvenile docket. We have given this record careful study on this point, and especially so in view of the infliction of the extreme penalty of the law at the hands of the jury. Appellant swore that he was 16 years of age, and would be 17 on December 3, 1920, the homicide having taken place in the summer of that year. He said he was born in 1903.

On cross-examination he stated that he left home in Matamoras, Mexico, in 1915, but could not remember whether it was summer or winter at the time; also that he was 12 years old when he left home. He denied having stated on his former trial for another offense that he was going on fourteen years of age when he left home. He admitted having lived in Falls County near the home of witness Mc-Douell, but did not remember whether. it was 1910, 1911, or 1912, but said he was eight years old at that time. He denied having stated on said former trial that he was seventeen years old; also denied that he had told the witness McDouell that he was 18 or 19 years old, and that he had been in the army. Appellant's sister testified as above stated with regard to her mother's children between herself and appellant, stating that she did not know her own birthday, nor the year she was born, nor the years either of the other children of her mother were born, and that she knew how old she was because she had been to see her mother two or three years prior to the trial, but that her mother did not then tell her she was 21, and that she did not remember how old her mother had told her that she was on the occasion of said visit. She denied telling the sheriff that her age was 24. It appears from the record that appellant's mother was not present at the beginning of the trial, but was located in Grayson County and brought as a witness during said trial. She testified as above indicated, with regard to the fact that she had had but three children, Frankie, Juana and appellant, and admitted that she had talked with Flores, an interpreter, the night before, and that she had not stated appellant's age correctly, giving as her reason that she did not feel good. On cross-examination she stated that appellant's birthday was December 3rd, and denied having told Flores, the interpreter, that it was August 27th, and also denied having told said Flores that she did not know what year appellant was born. She testified that he was born in 1903, but that this was the first time she had ever so stated. She admitted, when asked the night before as to the year of his birth, and if it was not 1901, that she had said she did not know,. but this she also explained by saying she was feeling sick. She also admitted having told parties the night before she had not seen appellant since he was three years old. She stated she did not know what year her son Frankie was born, nor the year of Juana's birth, nor her own.

Bearing on appellant's age, State witness Flores testified that appellant's mother told him that appellant would be 17 in August, 1920; also that she had told him there was one or two years difference between the ages of appellant and her daughter Juana; also that she said she did not know if appellant was born in 1901, 1902 or 1903, and that she kept account of his age by the months; that she told him that Juana would be 21 on December 3rd. Sheriff Moore testified that he went after appellant's mother to bring her as a witness, and that she told him appellant was 18 years old, and that his birthday was August 27th; also that appellant's sister Juana had told him

she was 24 years old, and that appellant was 18 years of age. Mr. Jennings, county attorney, introduced as a witness for some reason by appellant, testified that Juana told him she was 21 years old, and that appellant was 18. Wesley McDouell testified that he had a store at Satin, Falls county, and knew appellant there in 1913, at which time appellant lived about one hundred yards from said store; that he noticed appellant's ability to handle a larger boy in scuffling with him, and asked him how old he was, and that appellant said he was 11 or 12 years old. This witness also stated that in the spring of 1920 appellant came to his store, and in a conversation said that he had been in the army, and that he had told the army people he was 28 years old in order to get into the army. McDouell said that he then questioned appellant's statement and told him he was not over 18 or 19, and that appellant said he was correct in his surmise. Gus Guderian testified that appellant worked for him in the fall of 1916 and in the spring of 1917, and that when he first employed him he wanted to pay him less than a man's wages, but appellant told him at the time he was 15 years old; that appellant appeared about as large in 1917, when he left witness' employ, as he was at the time of the trial; that he paid appellant from his employment in 1916 a man's wages. Mr. Donohoo, court reporter, testified that he took down in shorthand appellant's testimony upon a former trial for another offense; that in response to a question as to how old he was when he ran away from home in 1915, appellant said he was going on 14 years of age; also that at said trial appellant's counsel asked him how old he was at the time of the trial, and he said he was 17, and when asked when "he had been 17," appellant replied "in December." We have thus given the testimony at some length bearing on the age of appellant at the time of the commission of this offense. The question was fully submitted to the jury, and by them considered in the light of all the testimony and decided adversely to appellant's contention. In view of the facts as detailed above, we do not feel justified in holding their decision of this question of fact to be unsupported or manifestly against the weight of the testimony.

It was in testimony that appellant had been convicted of robbery prior to this trial. In his argument to the jury on the instant trial, the assistant attorney referred to the fact of said conviction, and stated that appellant had been convicted of robbery with firearms. Objection being made that the testimony did not show said robbery to have been with firearms, the trial court verbally instructed the jury not to consider said statement. No further reference to the matter appears to have been made. No written instruction was asked by appellant on the subject. Complaint is now made of this argument. We do not think the mere mis-quotation of the evidence, apparently by inadvertence, would necessarily call for reversal, and this is especially true when no charge on the subject in writing is presented and refused. The point involved in the testimony that appellant had been convicted

of any felony, was its effect upon his credibility as a witness, and it not being controverted that he had been convicted of robbery, we think a reference to same as having been committed with firearms, which reference was promptly corrected, would not be of serious consequence to appellant.

It appears from the record that the shooting resulting in the death of Sharp was heard by the sheriff, who hurried to the jail and went upstairs where he found deceased in the throes of death. On the trial, Mr. Moore, the sheriff, was permitted to testify that he found behind the radiator in the jail an object variously described, but which seems to be composed of a short piece of iron having some wire wound around it, all being incased in some rags, one end of which formed a loop such as could go around the wrist and which was a sort of slug shot or bludgeon about fifteen inches in length altogether. This object was introduced in evidence. To the testimony of Sheriff Moore of the finding of this object and its introduction before the jury, objection was made by appellant upon the ground that said weapon was not shown to have had any connection with the homicide, and that appellant was not shown to have had any knowledge of same, and, therefore, could not be bound by the existence or finding of such object. The record shows that appellant, Jordan Israel and others were prisoners in the Falls County jail, that appellant was a trusty, and that deceased was the jailer. On the occasion in question when deceased came up and entered what is known as the run-around to feed the prisoners, according to the case as made by the State, appellant seized him and Jordan Israel and a Mexican named Sanchez, with both of whom appellant had been seen in consultation that morning, also at once took part in the attack upon deceased . Witnesses said that Jordan Israel, just before deceased came up, had something that looked like rags in one of his pockets, which he transferred to another pocket, and one witness said he saw Jordan Israel trying to put something which looked like rags into the mouth of deceased. As Sheriff Moore came up the steps Israel was seen to take from under his bunk and throw over behind the radiator the object which was found by Mr. Moore and became the subject of this objection. The trial court, in his qualification of appellant's bill of exceptions, states that the object in question was made of a piece of short iron with wire around it and a hook about three inches in length, all wrapped in rags, and that same was flexible and could easily have been doubled up and put in the pocket, and that when same was so doubled up its appearance was such that it might be taken for a rag. We think the evidence of Sheriff Moore admissible for various reasons. It was part of the *res gestae* of the transaction. We are also of opinion that when parties are charged with acting together in the commission of a crime, evidences of preparation of, or weapons found on, any one of them, whether before, during or so soon after the commission of the offense as to shed any fair light on the act or intent of such alleged participants, would be admissible against

each or all of them. In addition to the above and applicable to the instant case as made by the record, we observe that substantially the same description of said object appears in the testimony of the witness McCowan, which was admitted without objection from appellant. This is the witness who testified that as the sheriff came up the stairs he saw Jordan Israel throw behind the radiator a piece of iron wrapped in rags. It is a well established rule that when evidence is admitted without objection, the same evidence, or of that equivalent from some other witness, will not be rejected.

Appellant's third objection to the charge of the court as presented in his exceptions taken thereto before the jury retired, is as follows: "Defendant objects and excepts to the 9th paragraph of the court's charge wherein he authorizes a conviction of defendant for murder in the event the jury may find that he aided in the killing though the same was brought about by the act of some one else, there being no evidence in this case upon which to submit the charge of principals, and no evidence to authorize the charge therein given." The objection is very general and would bring in review the entire evidence in the case. Examining paragraph 9 of the charge of the court, which is quite lengthy, we conclude that in same the court was submitting the defensive theory that deceased was killed by Lee Andrew Massey (as claimed by appellant), and that in this connection the court instructed the jury that if they believed the killing was done by Massey they should acquit, unless appellant was connected with such killing as a principal, and if they had a reasonable doubt as to the fact that appellant killed deceased, or aided as a principal in such killing, the jury should acquit. We are unable to see any substantial objection to said charge. A half dozen prisoners in said jail testified to appellant's active participation in the killing. He himself, uncorroborated by testimony direct or circumstantial, swore that the killing was done by Lee Massey, another prisoner. It was proper for the court to submit in charge the defensive theory based on a killing by Massey. This was done. The overwhelming proof showing appellant's guilty participation in the homicide, we can see no possible harm in submitting his right to an acquittal if Massey, or any one else actually killed deceased, unless it was shown that appellant was also an actor in the commission of said crime. The jury are the judges of the facts,—of the credibility of the witnesses,— they may accept as true the testimony of one State or defense witness and reject others, and had the jury accepted the theory that Massey fired the shot, this would not have necessarily compelled them to reject the fact of appellant's guilty participation, and unless it appear that in some way harm might have resulted from giving a charge complained of, we are required by statute not to reverse, even though the charge be not, strictly speaking, called for by the facts.

The severity of the penalty imposed upon this appellant has led us to carefully consider each contention made by his able counsel, but we are unable to so far agree with any of same as to conclude that

89 Tex.—33

a reversal of this cause is necessary or demanded by the record. The crime was most heinous. Made a trusty by the man whom he slew, appellant took his life for no apparent reason except a desire to escape imprisonment as a penalty inflicted by a jury for an act for which deceased was in no way responsible. Apparently appellant was the leader in the murderous plan and its execution, resulting in the unprovoked death of an officer of the law in the discharge of his duty.

We find no reversible error in the record and the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

June 15, 1921.

HAWKINS, JUDGE.—Among other things, appellant complains in his motion for rehearing that we were in error in our original opinion wherein the statement was made that appellant had been convicted of robbery prior to the trial in the instant case, and to some extent basing upon that our holding that the argument of the district attorney in his closing address to the jury, in which he referred to the prior conviction, was not reversible error. On account of the severe penalty in this case we have again examined the bill of exceptions presenting this matter. We find this expression in the latter part of the bill. Whether it is a qualification placed there by the judge, or whether the entire bill is a bill prepared by the judge we are unable to say from the context.

"'To the extent that the assistant county attorney included 'fire-arms' in his argument there was no support in the evidence, and the court immediately sustained the objection of defendant and instructed the jury not to consider same. Experienced counsel for defendant pursued the incident no further than the verbal objection, not requesting any written instruction."

On account of the expression in the bill of exceptions that "to the extent that the assistant county attorney used the word 'fire-arms' in his argument there was no support in the evidence," would justify us in reaching the conclusion that there was support in the evidence as to the conviction for robbery, and the seemingly inadvertent statement in argument that it was with "fire-arms" does not seem to us sufficient to work a reversal of the case in view of the entire record.

All other matters called to our attention upon the motion for rehearing were considered and exhaustively discussed in the original opinion. We have again examined the assignments of error relative to those same matters, and believe that they were properly disposed of, and to discuss them again would serve no useful purpose, and would be largely a repetition.

The serious nature of the penalty has caused us to give careful consideration to all matters presented, not only in the motion for rehearing, but upon the original consideration of the case, and we have reached the conclusion that the motion for rehearing should be overruled.

*Overruled.*