JORDAN ISRAEL v. THE STATE.

No. 6238.    Decided May 25, 1921.

**1.—Murder—Experimental Evidence—Opinion of Witness.**

Where, upon trial of murder, the State introduced witnesses who were in jail at the time and witnessed the killing, and the testimony was assailed that they could not see the transaction, there was no error in permitting the sheriff to testify that he had gone to the said cell and placed himself both on and under said bunks in about the positions testified to by said witnesses and that from each of such positions he could see the place where the struggle occurred and where deceased was shot. This was not a conclusion of the witness.

**2.—Same—Principals—Change of Court—Requested Charge.**

Where, upon trial of murder, it was conceded that the fatal shot was fired by defendant's companion and not by himself, the court properly instructed the jury on the facts that they must find from the evidence beyond a reasonable doubt that defendant's companion with malice aforethought shot and killed deceased and that defendant was present and knowing the unlawful intent of his companion, aided him by acts, or encouraged him by words, or gestures, to so shoot deceased before a conviction could be justified; also submitting defendants theory that he did not know of the unlawful purpose, etc. Following Kirby v. State, 23 Texas Crim. App., 13, and other cases.

**3.—Same—Rehearing—Experimental Testimony—Shorthand Rendering of Facts.**

Where the State's witness swore that he made the examination to see whether or not a man sitting on top of the bunk could see, and found that he could and that one sitting in that position could see what took place in front of the door, and could also see from under the bunk, etc., and these expressions of the witness were in connection with his description of what he did while experimenting to determine whether it was possible for the witnesses to have observed the tragedy, there was no reversible error, and this was not opinion testimony. Following Martin v. State, 40 Texas Crim. Rep., 666, and other cases.

Appeal from the District Court of Falls. Tried below before the Honorable Prentice Oltorf.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*W. E. Rogers,* for appellant.

*R. H. Hamilton,* Assistant Attorney General, for the State.—On question of experimental testimony: Brown v. State, 169 S. W. Rep., 437; Rupe v. State, 42 Texas Crim. Rep., 477; Clark v. State, 38 id., 33.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Falls County of the murder of Oscar Sharp, and his penalty fixed at death.

This is a companion case to that of Jose Flores v. State, 88 Tex. Crim. Rep. 349, this day decided by this court. The facts are substantially the same in each case except insofar as they are detailed by the respective appellants. Mr. Sharp, deceased, was deputy sheriff and jailer of Falls County. Appellant, Jose Flores, Pete Sanchez, and a number of other persons were prisoners in said jail at the time of the homicide. According to appellant's testimony there had been a plan on foot, and discussed by a number of said prisoners, having for its object a jail delivery, for some time. Flores was a trusty and upon him rested the burden of taking the initiative in the execution of said plan. On the occasion in question deceased came up to feed the prisoners at noon. After opening the door to the run-around, which was called by the witnesses the bull-pen, deceased stood holding his

keys while Flores came to where he could get the food and convey it to the prisoners. As Flores approached deceased he sprang upon him and seems to have pinned his arms down, at the same time getting hold of the pistol of deceased. At almost the same moment appellant and Sanchez grappled with deceased. The State's witnesses testify that while appellant and Sanchez held deceased, appellant having him by the throat and Sanchez by the legs, Flores stepped back and shot deceased with the latter's pistol which he, Flores, had obtained in the struggle. Another shot was fired by Flores and the death of Mr. Sharp was the speedy result.

There is but one bill of exceptions in this record. From the testimony of some of the State witnesses, it appeared they were sitting on their bunks in the jail when the first shot was fired, and there is testimony indicating that after the first shot was fired one or two of said witnesses got under their bunks. However, they stated that from their positions they could see what was taking place between Mr. Sharp and his assailants. There seemed little or no dispute in the testimony as to where deceased was located at any time during the fatal occurrence. The question being raised as to the ability of said State witnesses to see what took place from on their bunks, and under their bunks, the sheriff of the county, Mr. Moore, was permitted over objection, to state that he had gone into the said cells and placed himself both on and under said bunks, in about the positions testified to by said witnesses, and that from each of said positions he could see the place where the struggle occurred and where deceased was shot. The only objection to this testimony appearing in said bill of exceptions, was that it called for a conclusion and the opinion of the witnesses. No question was raised as to the correctness of the positions taken by Mr. Moore in his experiments, and no other objection was raised except as stated. This is by no means a new question. Mr. Branch in his Ann. P. C., Sec. 128, collates many authorities upholding the admissibility of evidence as to the results of such experiments, if made under conditions similar or approximately similar to those existing at the time under investigation. We see no error in the action of the trial court in overruling the objection made and in refusing the special charge instructing the jury not to consider such testimony.

Appellant insists that the evidence failed to show such acting together as would make him guilty as a principal, it being conceded that the fatal shot was fired by Jose Flores and not by appellant himself. The charge of the court was in the approved form stating that the jury must find from the evidence beyond a reasonable doubt that Flores with malice aforethought shot and killed deceased, and that appellant was present and knowing the unlawful intent of Flores, aided him by acts or encouraged him by words or gestures to so shoot deceased, before a conviction would be justified. The court also submitted the law applicable to appellant's contention that he did not know of any purpose on the part of Flores to kill deceased, or inflict upon

him serious bodily injury, and the jury were told that if appellant did not agree to take the life of deceased, and that he did not intend, or know of any intent on the part of Flores, to do more than to seize and lock up deceased, or if they had a reasonable doubt as to such being his attitude in the case, the jury should acquit. A review of the facts at any length would be of no value. There is no question from the testimony of all the State witnesses but that at the time deceased was shot by Flores, appellant had him by the throat and Sanchez had him by the legs. This would appear to make it conclusive that Flores and appellant acted together in the commission of the offense. Appellant admitted on cross-examination that Flores had gotten the pistol of deceased from him at the time he, appellant, grabbed deceased. He also admitted that Flores had said before the difficulty begun that if he got hold of the gun of deceased and anybody came up to help *him* he was going to shoot *him*. The act of Flores in shooting deceased would appear to be one of the reasonable consequences of the admitted design of the parties, and if this were true it would make appellant guilty, though there be no evidence of an express agreement to take the life of deceased. Kirby v. State, 23 Texas Crim. App., 13; Bowers v. State, 24 Texas Crim. App., 542; Isaacs v. State, 36 Texas Crim. Rep., 505. Upon what appears to be a fair presentation of the law applicable to the facts, the jury have concluded all of the issues submitted to them against appellant and we see no reason to disturb their verdict.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

May 25, 1921.

MORROW, PRESIDING JUDGE.—In his motion for rehearing, appellant says, in substance, that he does not controvert the correctness of the ruling of the trial court and this court of that part of the testimony of the witness Moore wherein he described what he saw from the positions he took in the jail when experimenting, but insists that a part of Moore's testimony consisted of his opinion, that is, where he used the expressions:

"I have made an examination to see whether or not a man sitting on the top bunk . . . could see, . . . and I find that you can."

"One sitting in that position could see what took place in front of the door. A person or prisoner, if they are under the bunk . . . could look out through the cell door and see one or more persons in front of the door."

These expressions of the witness Moore were in connection with his description of what he did while experimenting to determine

89 Tex.—25

whether it was possible to observe the movements of those connected with the tragedy from positions in the cell which were occupied by certain witness who were inmates of the jail at the time of the homicide and who, by their testimony, declared that they saw the appellant and others engage in the conflict which resulted in the death of the deceased.

We hardly think it sound to characterize the testimony given as opinion testimony. It but represented the result of the experiment made by the witness. It is said by a text-writer:

"When the opinion is the mere shorthand rendition or crystalization of the facts, then the opinion can be given, subject to cross-examination, as to the facts on which it is based." (Wharton's Crim. Evidence, Vol. 1, Sec. 458).

On the trial, there was evidence descriptive of the interior of the jail where the deceased was killed. There were also photographs portraying its condition. The witness Moore testified, describing in detail the various positions he took and declared that from that he could see into the corridor, and in connection therewith made also the statements quoted.

The part of the evidence complained of, we think, was but a shorthand rendition of the facts, within the meaning of that term. The precedents in this State appear to support this view. This is notably true in the case of Martin v. State, 40 Texas Crim. Rep., 666. The central controverted fact was whether the shot was fired from the window of appellant's house or from a point in his yard. Various experiments were made, and the court disposed of the legal questions presented in the following language:

"After detailing these experiments, defendant proposed to prove by him that after making these experiments the shot holes in the fence could not have been made by anyone firing from the window as testified by the State's witnesses. We believe, under the circumstances of this case, this testimony should have been admitted. It is sometimes practically impossible for the witness to detail facts and circumstances so as to convey a correct idea of the facts sought to be proved by him,—as for instance, comparing the tracks upon the ground with the shoes found upon the accused. This is denominated by the writers as being a shorthand rendering of the facts, and under such circumstances this character of testimony is generally admissible."

See also Hamilton v. State, 74 Texas Crim. Rep., 219, 168 S. W. Rep., 538; Crumes v. State, 28 Texas Crim. App., 516.

We are unable to concur in the view that under the record, as presented, error is shown to have been committed in receiving the testimony complained of.

The motion is overruled.

*Overruled.*