PEDRO SANCHEZ v. THE STATE.

No. 6276. Decided October 19, 1921.

Rehearing denied January 11, 1921.

1.—Murder—Certified Copy of Venire—Practice in Trial Court.

Where defendant insisted on appeal that he was denied the rights accorded him under the Criminal Code, Article 672, 578, and 558, that is, he was

not given the benefit of the mandatory statute requiring that he be served with a copy of the return on the venire writ one day before the trial, and that his appointed counsel was not given time to prepare for trial, and that the two days for filing pleading were not allowed him, but the record on appeal showed that the defendant had ample time, and in accordance with the statute, to file any motion he desired, etc., there was no reversible error.

2.—Same—Challenge for Cause—Special Venire—Bill of Exceptions—Rule Stated.

Where, upon appeal from a conviction of murder inflicting the death penalty, it appeared from the record that the trial judge was probably not warranted in refusing to sustain the challenges for cause to the jurors named, yet it appearing from said record that none of said jurors served on the jury which tried the defendant, the same was not reversible error. Following Morrison v. State, 40 Texas Crim. Rep., 499.

3.—Same—Challenge for Cause—Rule Stated—No Juror Forced on Defendant.

The rule is that to secure a reversal by reason of an erroneous failure of the trial judge to sustain the challenge of veniremen for cause, the bill of exceptions must show injury, and where the bill fails to show that error resulted in forcing upon the jury, against defendant's wish an objectionable juror, there was no reversible error. Following Villereal v. State, 61 S. W. Rep., 761, and other cases.

4.—Same—Change of Venue—Prejudice—Compurgators—On Motion of Court.

Where a motion for change of venue upon the ground of prejudice was prepared and sworn to by the defendant, but compurgators were not obtainable, the same could not be considered on appeal, and where the record showed that there was no error in the court's discretion in not changing the venue on his own motion, there was no reversible error.

5.—Same—Challenge for Cause—Waiver—Jury and Jury Law.

Where, upon trial of murder, the defendant interposed a challenge for cause to a certain juror, and it appeared from the record that the disqualification of the juror, if any, could be waived, and besides the records show that the said juror was not forced upon defendant against his will, there was no reversible error.

6.—Same—Jury and Jury Law—Misconduct of Jury—Practice in Trial Court.

Where appellant sought a new trial upon the ground that the jury in their retirement received new evidence, to-wit, the fact that his co-defendants had been convicted and given the death penalty for the same offense, and that such evidence was used against him, but the records show that the court had found as a fact that no new evidence was received by the jury in their retirement, and that the evidence did not sustain appellant's claim as set out in his motion, and the record supported this finding, there was no reversible error. Following Peddy v. State, 31 Texas Crim. Rep., 550, and other cases.

7.—Same—Confession—Co-defendant.

Where appellant complained of the exclusion of the confession of Jordan Israel, his co-defendant, to the effect that he and another killed the deceased, and that the appellant had nothing to do with it, the same was not admissible in evidence. Following Bowen v. State, 3 Texas Crim. App., 318, and other cases.

8.—Same—Rehearing—Two Days to Prepare for Trial.

Where appellant in his motion for rehearing complained that his rights were abridged in not giving his counsel time to prepare for trial, but it ap-

peared from the record that defendant's counsel had at least two full days to prepare for trial, etc., there was no reversible error.

Appeal from the District Court of Falls. Tried below before the Honorable Prentice Oltorf.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*Nat Llewellyn,* for appellant.—On question of written pleading and two days preparation: Harris v. State, 169 S. W. Rep., 657.

On question of misconduct of jury: Hilliard v. State, 222 S. W. Rep., 553; Luman v. State, 216 id., 395; Gilbert v. State, 215 id., 106; Kirkpatrick v. State, 211 id., 230; Weaver v. State, 210 id., 698; McDougal v. State, 194 id., 944.

*R. H. Hamilton,* Assistant Attorney General, for the State.

MORROW, Presiding Judge.—The conviction is for the murder of Oscar Sharp; appellant is condemned to suffer death.

The facts developed are not different from those in the companion case. Isreal v. State, 89 Texas Crim. Rep., 382, 230 S. W. Rep., 984; and Flores v. State, 89 Texas Crim. Rep., 506, 231 S. W. Rep., 786.

Isreal, Flores and appellant, Sanchez, were confined in the county jail. Flores had the privilege of the "run-around." Sharp, a deputy sheriff, while feeding the prisoners, was seized by Flores and assaulted by Isreal. Flores, obtaining Sharp's pistol, shot him to death. Appellant, according to the State's witnesses, participated, seizing the deceased around the legs and obtaining possession of the jail keys. The keys were wrested from him by another prisoner who threw them out the door and gave the alarm.

In separate trials antecedent to that of appellant, the death penalty was assessed against both Flores and Isreal.

Appellant insists that he was denied the rights accorded him under Articles 672, 578 and 558 of the Code of Crim. Proc., that is, he was not given the benefit of the mandatory statute requiring that he be served with a copy of the return on the venire writ one day before the trial; that his appointed counsel was not given time to prepare for trial and that the two days allowed by statute for filing the pleadings were not accorded him. The facts set out in the bills of exceptions which were prepared by the court fail to support appellant's complaint. The copy of the return on the venire writ was served upon him several days before the trial. His case was originally set for the 22nd of the month, later postponed to the 26th, and subsequently deferred to the 29th of the month. The counsel appointed some ten days prior to the first setting represented the appellant to the 24th, when he was permitted by the court to withdraw and another appointed in his stead. The new appointment was made on the afternoon of the 24th but the coun-

sel failed to see the appllant and did not have the papers in the case until the moring of the 26th of the month. Failure to obtain the papers was due to the absence of the clerk, though they might have been obtained from the deputy had counsel known there was one. Counsel was told by the court, on hearing of his motion, that he would give him such time as he deemed necessary to prepare and file any motion that he desired, including the motion to change venue, and, in fact, he did postpone the trial for three days.

Bills of Exceptions Nos. 3, 4, 6, 7, 8 and 9 refer to the action of the court in refusing to sustain the appellant's challenge of certain veniremen for cause.

Venireman Linthicum said, in substance (Bill No. 6) that he had learned of the homicide and expressed an opinion concerning all who took part, but had no knowledge whether appellant was a participant or not; that he was aware of the penalty assessed against those who had been tried, and was of the opinion that if appellant's connection was shown with the commission of the offense, he should be dealt with in the same manner as were his associates.

The attitude of Juror Jenkins (Bill No. 7) was not materially different from that of Linthicum save that he was a friend of the deceased of long standing.

Venireman Davis (Bill No. 9) while he had not heard of the trials of the companion cases, was aware, in a general way, of the evidence. He said:

"I feel that I have an opinion. I suppose I would take that opinion in the jury box. I think that it would take less evidence to establish the defendant's guilt than it would if I had not formed an opinion about the other cases. It would take evidence to remove the opinion I now have. I would have to be convinced. The defendant would have to bring that evidence in to convince me that he was not guilty."

This opinion was established upon what he had read in the newspapers and what he had heard. The juror expressed, on cross-examination, the belief that he could lay aside the opinion and become an unprejudiced juror, and said that, from hearsay, he was aware of the fact that the appellant was with the parties who had been convicted with the killing of Sharp.

We are not prepared to say that the trial judge was warranted in refusing to sustain the challenge for cause for the jurors named. The opinions formed by the veniremen and the source thereof were not such as would apparently characterize them as impartial jurors within the purview of the statutes of this state. (See Code of Crim. Proc., Art. 692, subdivision 13; Vernon's Texas Crim. Law, vol. 2, page 375, note 30, and cases cited; also Shannon v. State, 34 Texas Crim. Rep., 5; and other cases listed by Mr. Branch in his Texas Crim. Statutes, sec. 558 and 559.) The conclusion of the veniremen that they might discard their opinions and render an impartial verdict was not, under the circumstances, conclusive of their impartiality.

Gallaher v. State, 40 Texas Crim. Rep., 307. Assuming them not to have been impartial jurors, inasmuch as neither of them served on the jury that tried the appellant, the error in refusing to dismiss them was not alone sufficient to work a reversal of the judgment. Morrison v. State, 40 Texas Crim. Rep., 499; Taylor v. State, 44 Texas Crim. Rep., 548; Reynolds v. State, 71 Texas Crim. Rep., 454, 160 S. W. Rep., 364; Havard v. State, 73 Texas Crim. Rep., 578, 166 S. W. Rep., 507; Myers v. State, 7 Texas Crim. App., 653; and other cases listed in Branch's Texas Crim. Statutes, sec. 543, page 279.

The established rule appears to be that to secure a reversal by reason of an erroneous failure of the trial judge to sustain the challenge of veniremen for cause, the bill of exceptions must show injury, and where the bill fails to show that the error resulted in forcing upon the jury, against appellant's will, an objectionable juror, it is insufficient to comply with the rule. Villereal v. State, 61 S. W. Rep., 761; Mays v. State, 50 Texas Crim. Rep., 170; Galan v. State, 76 Texas Crim. Rep., 619, 177 S. W. Rep. 125; Hudson v. State, 28 Texas Crim. Rep., 43; Sutton v. State, 31 Texas Crim. Rep., 298; Aistrop v. State, 31 Texas Crim. Rep., 460; Green v. State, 49 Texas Crim. Rep., 647; Campos v. State, 50 Texas Crim. Rep., 291; Lahue v. State, 51 Texas Crim. Rep., 162; Wyres v. State, 74 Texas Crim. Rep., 51, 166 S. W. Rep., 1151. This is not shown in either of the bills.

A motion to change the venue upon the ground of prejudice was prepared and sworn to by the appellant, but compurgators were not obtainable. These were essential to require its consideration as an application upon the part of the appellant. Code of Crim. Proc., Art. 628. The court rightly sustained an exception to it. Mitchell v. State, 43 Texas Reports, 512; O'Neal v. State, 14 Texas Crim. App., 582; Macklin v. State, 53 Texas Crim. Rep., 197; Gibson v. State, 53 Texas Crim. Rep., 339. The court, as disclosed by the bill, considered whether it was his duty to change the venue on his own motion. Bill of exceptions No. 13, relating to this matter, was prepared by the trial judge. From it, it is made to appear that there were one hundred men drawn; seventy-one summoned. A number were excused by agreement. Fifty appeared and were exhausted without obtaining a jury. Talesmen were called, and after the examination of a total of one hundred and three men, the jury was complete. Sixty-two were excused upon challenge for cause. Twelve were peremptorily challenged by the state, and seventeen were excused upon peremptory challenges of the appellant. Of those excused, eighteen were because of conscientious scruples against capital punishment; four were prejudiced against the nationality to which the appellant belonged. Of those peremptorily challenged, only four had an opinion. Ten of the twelve jurors who served had no opinion, while two had qualified opinions obtained from hearsay, which would not influence their verdict. All of the jurors who served were accepted by the appellant before the exhaustion of his fifteen peremptory challenges with the exception of the Juror Johnson.

The bill of exceptions shows that Johnson stated that he was "without bias, prejudice or opinion." On cross-examination, he said he had heard something about the case and read of it when it occurred and heard it discussed, but had formed no opinion as to what should be done with the participants; had given it but little thought; that he had no doubt that Sharp was dead and believed he was killed in jail and that he had heard it reported that he was killed by two Mexicans. and a negro who were trying to escape; that there was no doubt in his mind as to those facts; that he had known Sharp about ten years; liked him as a man but had had no business with him; that he could render an impartial verdict. Upon conclusion of this examination, no point was made touching his qualifications, but appellant's counsel said: "We pass the juror," and State's counsel, after deliberation and conference among themselves, accepted the juror. Upon this happening, counsel for appellant challenged him for cause because "it appears that the juror had heard all the facts in the case and said he thought it was true." The court then re-examined the juror and he stated that he had no opinion whatever about this case; that he could try the defendant solely on the testimony in the case, uninfluenced by anything he had heard or any information as to how it happened, and the fact that he had an opinion that Sharp was killed would have no bearing upon his passing upon the testimony impartially; that he could and would disregard anything he had heard about it and try the case on the evidence adduced on the trial. The counsel for appellant did not further cross-examine the juror but renewed his challenge for cause, which was overruled and the juror sworn. No exception was reserved to the ruling of the court at the time, nor was it indicated that the juror was objectionable on any other ground; nor was any request made to be accorded the privilege of exercising peremptory challenge though the court had taken such action in two previous instances. As soon as the juror was sworn, appellant's counsel stated to the court that "he wanted the juror forced on him" and did not, at any time, take or have noted any exception to the overruling of his challenge for cause.

This bill pertains solely to the action of the court in failing to change the venue. If, however, that part of it touching the action of the court with reference to the Juror Johnson may be given effect as though it were a part of the Bills of Exceptions 6, 7 and 9 relating to failure to sustain challenges for cause, it does not disclose facts which would warrant this court in ordering a reversal of the judgment. At the time the appellant passed the juror and the state accepted him, appellant knew of him all that he knew at the time he ultimately made his challenge. It cannot be justly contended that the juror was subject to such disqualification as would prevent its waiver (Poole v. State, 45 Texas Crim. Rep., 348) and the conduct of the appellant with reference to him, if not a waiver, was upon the border line. Horbach v. State, 43 Texas Reports, 260; Baker v. State, 3 Texas Crim. App., 525; Drake v. State, 5 Texas Crim. App., 655; McMillan v. State, 7

Texas Crim. App. 142. Even after the State had accepted him and the court had overruled appellant's challenge for cause, he did not seek the privilege of exercising peremptory challenge. Whether Johnson was an objectionable juror, within the scope of that term as defined by the decisions of this court, is doubtful. (See Hudson v. State, 28 Texas Crim. Rep., 338; Maines v. State, 35 Texas Crim. Rep., 113; Keaton v. State, 40 Texas Crim. Rep., 145; Connell v. State, 45 Texas Crim. Rep., 153. Assuming that he was, however, the bill does not show that he was forced upon the appellant against his will. This we infer from the recital in the bill: "As soon as the juror was sworn, appellant's counsel stated to the court that 'he wanted the juror forced on him' and did not at any time take or have noted any exception to the overruling of his challenge for cause." The bill, as indicated above, is addressed to the action of the court in refusing to change the venue and to that action exception is reserved.

The appellant sought a new trial upon the ground that the jury, in their retirement, received new evidence, namely: the fact that Flores and Israel had been convicted and given the death penalty for the same offense and that such evidence was used against the appellant. The evidence heard upon this issue is set out in a bill of exceptions prepared by the trial judge in lieu of the one tendered by the appellant. In the bill, it is specifically stated that the court had found as a fact "that no new evidence was received by the jury in its retirement and that the evidence did not sustain appellant's claim that one or more of the jurors argued" or said that the death penalty ought to be assessed because it was assessed in the companion cases. It is stated in the bill that, with one exception, each of the jurors knew in advance of his selection of the previous conviction of the co-defendants. Hogg, the excepted juror, knew before he came to court that one of the participants had been convicted and the death penalty assessed against him, and that he learned that the other was in like situation after he came into court, but whether after he became a juryman he could not say. On the first ballot, all members of the jury, save Hudson, were for the death penalty. Hudson testified on the hearing of the motion for new trial that he knew of the result of the trial of the appellant's co-defendants before he was taken as a juror, and that he knew of no references to the other convictions while he was on the jury. It appears from the bill also that Hudson's knowledge was developed in his *voir dire* examination; that with the knowledge he was selected as a juror without objection.

In the examination of the witnesses reference was made to their testimony upon the former trial, and in the case the conduct of Flores and Israel was the subject of frequent reference. The evidence showed. without dispute, that Flores fired the fatal shot, and it was the State's theory of appellant's case that he was a principal offender and the matter was so submitted to the jury.

We have carefully examined the testimony embraced in the bill, which was heard upon the motion for new trial. From the testimony of the Juror Atkins, standing alone, the inference would be properly drawn that in the jury's discussion, the fact that the death penalty had been assessed in the companion cases was referred to as a reason for giving a like punishment in appellant's case. The cross-examination of the Juror Atkins, taken in connection with the testimony of the other jurors who testified on the motion for new trial, leaves the record in such shape as would not justify us in overturning the finding of the trial judge that the averment in the motion for new trial was not sustained. That all of the jurors save Hogg knew of the previous convictions and assessment of the death penalty is obvious, and the record reveals nothing controverting the court's conclusion to that effect; that Hogg knew of the previous trial of one of the co-defendants before he attended court is definitely established, and the record sustains the finding of the trial judge that it was not shown that he had learned of the other conviction after his selection as a juror.

The trial of each of the three charged with the homicide followed the death of the deceased in rapid succession. The public mind was no doubt shocked by the murder of the officer, taken at a disadvantage while he was in the discharge of his duty. The knowledge of the jurors of the result of the previous trials alone rendered it difficult to select an impartial jury. The conditions, however, concerning the trial, while they might have appealed to the trial judge in considering whether, upon his own motion, he should change the venue, are not available upon appeal except to impose upon the court the duty to give to the record a most careful scrutiny and to accord to the accused the benefit of every legal doubt arising from the record as to the fairness of his trial. The knowledge of the jurors of the result of the trials of the co-defendant did not disqualify them unless, upon such knowledge, they had formed opinions concerning the guilt or innocence of the accused. Such is the declaration of this court in Thompson's case, 19 Texas Crim. App., 593; Johnson v. State, 21 Texas Crim. App., 379; Steagald v. State, 22 Texas Crim. App., 488; Suit v. State, 30 Texas Crim. App., 323; Pierson v. State, 21 Texas Crim. App., 57; Peddy v. State, 31 Texas Crim. App., 550.

If the evidence sustained the allegations in the motion for new trial that the result of the other trials was urged and used against the appellant, a different and serious question would arise. The theory upon which one who is aware of the conviction of the co-defendants is held qualified is the conclusion that he will be impartial, arising from his statement that the knowledge mentioned will not influence him in the conduct of the trial. This theory would be inconsistent with the subsequent conduct of the juror in using his knowledge of the result of the trial of the co-principals to bring about the conviction of the accused on trial or enhance the penalty against him. Weaver v. State, 85 Texas Crim. Rep., 112. The finding of the trial judge that such use

was not made of the knowledge of the jurors, based as it is upon conflicting testimony, is binding upon this court. Howe v. State, Texas 117 S. W. Rep., 500; Shaw v. State, 32 Texas Crim. Rep., 155; Branch's Ann. Texas Penal Code, Sec. 574; Potts v. State, 56 Texas Crim. Rep., 47.

Complaint is made of the exclusion of the confession of Jordan Isreal to the effect that he and Flores killed the deceased and that the appellant had nothing to do with it. The extra-judicial statement of Isreal that he and Flores and not the appellant took part in the homicide was not admissible. Such has been the ruling of this court on numerous occasions. Bowen v. State, 3 Texas Crim. App., 618; Holt v. State, 9 Texas Crim. App., 583; Walsh v. State, 85 Texas Crim. Rep., 216. The same rule has received the sanction of the text-writers as well as the courts in other jurisdictions. Wharton's Crim. Evidence, vol. 1, page 476, and note in Amer. State Rep., vol. 131, page 778. Upon the subject, Mr. Wharton says:

"Allowing proof of innocence by the self-assumed blame of one beyond the reach of the law would soon disorganize criminal procedure."

A review of the record reveals no weakness in the testimony, no ruling of the trial court, nor act upon the part of the jury which would warrant a reversal of the judgment.

It is theefore affirmed.

*Affirmed.*

### ON REHEARING.

### January 11, 1922.

HAWKINS, Judge.—Appellant insists that we were in error in holding that his rights were abridged in not giving his counsel time to prepare for trial. We have again carefully examined the bill of exceptions presenting this question. We are bound by the recitals in the bill. When the case was finally called for trial on November 26th, the newly appointed counsel desired further time to prepare some motions, and we quote from the bill as to what occurred.

" . . . before any proceeding of any kind was had, the court stated to defendant's counsel that the court was willing to give him all the time he thought necessary for him to prepare for and file any motions he might desire to file, but called attention to the fact that it would necessitate the return of the special veniremen who were present consisting of about 50, and asked counsel if he had any objection to proceeding with the examination of such jurors as were present, with the understanding that adjournment would then be taken to Monday, the 29th, at which time he could present any motions desired, and same would be heard and passed on as seasonably filed. Counsel stated

that he was perfectly willing to pass upon the jurors present under such an understanding, and no further objection to proceeding was made by counsel. As soon as the jurors present were tested, court adjourned as agreed from Friday morning until Monday. On Monday defendant filed a motion to quash the indictment, which was heard upon its merits and overruled. Defendant then filed a motion for change of venue, which was heard under the agreement made the preceding Friday, and overruled on demurrer by the State on the ground that same was not supported by any affidavits as required by Statute. Defendant's counsel thus had all of the 27th and 28th, to further prepare for trial, and the agreement mentioned was understood by all parties as the postponement the defendant desired and all that he desired, the only qualifications being the agreement to test the jurors present Friday, which counsel for defendant agreed to without hesitation."

Many other matters are presented in the motion for rehearing. They only assert the correctness of the assignments of error in the original brief, and question the conclusions announced in our former opinion. While all issues presented originally received our most careful consideration, yet, because of the severest penalty known to our law having been assessed, we have again patiently examined the bills of exceptions presenting the various alleged errors committed on the trial. We find no occasion to write again at length with reference to them. The re-examination has only confirmed our belief that we reached and announced correct conclusions in our original opinion, and the only ones properly deducible from the record before us.

The motion for rehearing is overruled.

*Overruled.*