ED KIRBY v. THE STATE.

No. 7854. Decided January 16, 1924.

Rehearing denied March 5, 1924.

1.—Murder—Bills of Exception—Argument of Counsel.

Where the argument of State's counsel was not excepted to at the time it was made and the court's attention was not called to it, until the jury were about to leave the court room for deliberation on the case, when a requested charge was presented to withdraw the argument which was refused, and this court is not advised in what connection the language objected to was used, and standing alone presents no harmful error, there is no reversible error.

2.—Same—Misconduct of Jury—Discretion of Court.

Where the matters alleged in the motion for a new trial as to the misconduct of the jury involved matters of fact, and the court overruled the motion and no abuse of discretion being shown, there is no reversible error. Following Howe v. State, 77 Texas Crim. Rep., 108, and other cases.

3.—Same—Charge of Court—Weight of Evidence—Manslaughter.

Where, upon trial of murder, the court's charge on manslaughter in no way indicated to the jury that the court might think defendant had not acted in self-defense and matters were left to the determination of the jury it was not on the weight of the evidence.

4.—Same—Verdict—Murder in First Degree—Surplusage—Words and Phrases.

Where the jury returned a verdict finding the defendant guilty of murder in the first degree and assessed the punishment of death, and no complaint was made as to the form of the verdict until the question was raised in this court held that no fundamental error was committed, and the words murder in the first degree did not vitiate the verdict.

5.—Same—Sufficiency of the Evidence—Death Penalty.

Where, upon trial of murder, the court instructed the jury upon murder, manslaughter, and self-defense, the jury were within their province in finding defendant guilty of murder and assessing the death penalty, the evidence sustaining the conviction. Following Stephens v. State, 93 Texas Crim. Rep., 164.

6.—Same—Rehearing—Argument of Counsel.

An objection to argument of counsel should be made during its progress, for the reason that it may be then possible to withdraw or correct it and obviate any prejudicial effect. However, the bill of exceptions in the present case does not show that if the argument was made, that it was not a proper one.

7.—Same—Practice on Appeal.

Our consideration of the matter of the motion for rehearing fails to lead us to the conclusion that there .was error committed or that the trial accorded appellant was other than a fair one, and the motion is overruled.

Appeal from the District Court of Colorado. Tried below before the Honorable Lester Holt.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*Quin & Hoyo,* for appellant.—On question of argument of counsel: Adams v. State, 84 S. W. Rep., 231; Williams v. State, 170 id., 708; Little v. State, 178 id., 326.

*Tom Garrard* and *Grover C. Morris,* Assistants Attorney General, for the State.

HAWKINS, Judge.—Upon conviction for the murder of his wife appellant was assessed the death penalty.

The parties involved are negroes. Appellant lived with his wife and children on a farm some few miles from the city of Columbus. The dead body of the wife was discovered about two o'clock upon the day of the killing. Willie Kirby, about sixteen years old, was away from home at dinner time but came in about two o'clock and discovered his mother lying on the floor dead, and immediately told his brother, Lee Kirby, who was at that time coming through the field towards the house. Willie Kirby testified that he did not hear his father and mother fussing that morning and that there was nothing between them the day before, but says, "I had heard a conversation between them, fussing and going on. I never heard my father say anything, they were just fussing and going on." Lee Kirby testified that he left home about one o'clock on the day of the killing and left appellant, who is his stepfather, and his mother (deceased), at the house; that he returned home between one and two; that appellant was not there when he got back; that his mother was lying on the floor dead. The officers reached the scene of the killing about three o'clock. They found two wounds upon deceased's head, one being on the forehead over the right eye which appears to have crushed the skull and caused the protrusion of the eye; another wound was on the front of the head but higher up and seemed to have been more of a cut. Just outside the window they discovered an axe with blood and hair upon the heel of it and also upon one corner of the sharp side. Appellant's testimony was, in substance, that his wife had been running around with other negro men and that he had remonstrated with her about it; that on the day of the killing he was talking to her about leaving and wanted to take with him a three year old boy named Ray; that his wife told him he could not take this boy as it was not his and told him she had gotten it by another man and would get another by the same man if she wanted to; that she threatened to kill him or have him killed and made an attack upon him with a stick, striking him upon the arm; that he retreated to the door, opened it and reached just outside and secured the axe, which he says was on the front porch near the door; that his wife was advancing upon him and in the act of striking him a second time when he struck her with the axe. He disclaims knowledge of having hit her but one time. He says he threw both the axe and stick out of the window. He also testified that a three months old baby she had was not his child. The state introduced a number of witnesses who lived near appellant and his wife, some of them residing upon the same farm, who had known deceased for some time; the testimony of all of them was to the effect that they had never heard any complaint about deceased associating with other men, but that her repu-

tation in that respect was good. It was generally understood in the neighborhood that appellant was jealous of his wife and did not desire any other men about the place. The officers testified that in a search for the instrument with which the killing occurred they found the axe and marks on the ground indicating that it had been dropped out of the window; there was no grass or obstruction in the yard at that point to prevent them finding or seeing any other weapon that might have been near there, and that they failed to find a stick or club of any kind. After appellant testified the axe was on the front gallery and that he secured it by opening the door and reaching it without stepping from the room where the killing occurred, Lee Kirby was again placed upon the stand by the state, who testified positively that he had used the axe on the morning of the killing and that he left it at the woodpile when he came home at noon and that the axe was not upon the gallery when he left the house at one o'clock.

Upon the issue raised by appellant's own testimony the court submitted to the jury manslaughter and self-defense, and also submitted a special charge requested by appellant upon the issue of manslaughter.

By bill of exception number two complaint is made of certain argument of the district attorney. The learned trial judge qualifies the bill, stating that no objection was made at the time of the argument, and his attention was not called to it until the district attorney had concluded his argument and the sheriff had been directed to take the jury to their room for deliberation on the case; that at this juncture, and before the jury had retired, one of appellant's attorneys presented a written charge requesting the court to direct the jury to disregard the alleged objectionable argument; that not being able to recall that the remark complained of had been made the court declined to give the requested charge. The incident thus related but serves to emphasize the necessity of lodging complaint to supposed objectionable argument at the very time it is made. For our views see Simmons v. State, 93 Texas Crim. Rep., 421, 248 S. W. Rep., 393; Harris v. State, 93 Texas Crim. Rep., 544, 249 S. W. Rep., 485; Weige v. State, 81 Texas Crim. Rep., 476, 196 S. W. Rep., 524; Spears v. State, 91 Texas Crim. Rep., 51, 237 S. W. Rep., 270. The Harris case is directly in point. It and the other authorities would justify the non-consideration of the bill. However, the extreme penalty inflicted has moved us to examine it. The argument complained of was, "Gentlemen, you cannot acquit the defendant unless you find that he acted as a reasonable man when he committed the homicide." We are not advised by the bill in what connection the language was used. It may have been entirely proper in relation to some matters arising for discussion. Standing alone as it does it presents no such ob-

96 T. C.—38.

viously harmful argument as demands a reversal. Complaint is also made in bill number eight of certain other argument of the district attorney; relative to it the learned trial judge says in his qualification that he "cannot say the attorney used the language complained of; no objection was ever made thereto, no instruction was ever asked, and the first time my attention was called to this matter was by motion for new trial." The language complained of appears to have been a reasonable deduction from the evidence, but whether it was or not the authorities heretofore referred to make it clear that objection to argument cannot be raised for the first time in the motion for new trial.

In his motion for new trial appellant alleges that after having agreed upon the question of guilt the jury stood some for the death penalty and some for life imprisonment; that it was finally agreed among the jurors that they would take one more ballot and if the result thereof showed a majority for life imprisonment the jury would assess that punishment and if a majority stood for the death penalty they would assess the latter punishment; that upon the ballot being taken a majority were for the death penalty and the jury then adopted that as their verdict without another ballot having been taken. Appellant asserts that the verdict was arrived at in a manner which is contrary to subdivision three of Article 837, of our Code of Criminal Procedure which provides that a new trial shall be granted "where the verdict has been decided by lot, or in any other manner than by a fair expression of opinion by the jurors." The matters alleged in the motion for new trial raised a question of fact. The evidence of all of the jurors was taken upon the hearing of the motion. One juror, a Mr. Obenhaus, testified that the jury all agreed to the guilt of defendant and then began to ballot on the punishment to be assessed; that the first ballot stood eight for life imprisonment and four for the death penalty; that only two ballots were taken on the penalty; that after the first one was taken the jury agreed that they would take one more ballot and whichever way the majority stood the whole jury would adopt it as their verdict, and when the second ballot was taken the jury stood seven for the death penalty and five for life imprisonment, and the jury then adopted the death penalty as their verdict. It appears from the record that a misunderstanding between the attorneys and the court relative to the testimony of the juror Obenhaus having occurred he was recalled and then testified that there was no agreement by the jury to abide by the majority rule and that if he was understood as so testifying while he was first on the stand he had been misunderstood; however, on re-direct examination he again testified that there was an agreement by the jury to abide by the majority rule. It will be observed that this juror swore both ways upon the point at issue. Ten of the jurors

testified positively that no such agreement was made; that after the first ballot was taken some one suggested that they take another ballot and be controlled by the majority vote but that this was not agreed to and was abandoned; that after the second vote stood seven for the death penalty and five for life imprisonment another ballot was taken on which all the twelve voted for the death penalty. The eleventh juror, while not testifying directly that no agreement was made, did testify that they took three ballots upon the question of penalty and that on the third ballot all twelve jurors voted for the death penalty. When appellant asserted misconduct of the jury in the particular complained of the burden of proving it rested upon him. The evidence taken upon hearing the motion rendered the question a controverted one (if the testimony of the juror Obenhaus can be said to have raised the issue) and it was within the province of the trial judge to settle the controversy; having done so his finding upon the matter would be conclusive upon this court unless an abuse of his judicial discretion in the matter clearly appeared. Howe v. State, 77 Texas Crim. Rep., 108, 117 S. W. Rep., 500; Shaw v. State, 32 Texas Crim. Rep., 155, 22 S. W. Rep., 588; Potts v. State, 56 Texas Crim. Rep., 47, 118 S. W. Rep., 535; Sanchez v. State, 90 Texas Crim. Rep., 518, 236 S. W. Rep., 734; Manley v. State, 92 Texas Crim. Rep., 537, 244 S. W. Rep., 533. For a collation of many other authorities upon the same point see Section 574, Branch's Ann. Pen. Code, page 295. The record presents no question of an abuse of judicial discretion upon the part of the learned trial judge in determining the issue of fact in favor of the state.

In the tenth paragraph of the court's charge he instructed the jury as follows:

"If you believe from the evidence that the deceased, Lula Kirby —————— struck the defendant a blow with a stick thereby causing him pain, and that it aroused defendant to such a degree of anger, rage, sudden resentment or terror as rendered his mind incapable of cool reflection and that the defendant while in this state of mind (and not in defense of himself against an unlawful attack producing a reasonable fear or expectation of death or serious bodily injury) did ————— hit the said Lula Kirby on the head with an axe and thereby kill her, you will find the defendant guilty of manslaughter, etc."

That part of the foregoing charge which is in brackets was excepted to as being upon the weight of the evidence, and appellant requested a special charge in exactly the same language with the additional words in brackets, "If you should find from the evidence that he did not so act in defense of himself." We are unable to grasp the significance of the criticism that the charge in question is upon the weight of the testimony, or to understand in what way the

meaning of the charge would have in any wise been changed by incorporating the additional words mentioned. In no manner does it occur to us that the language contained in the brackets indicated to the jury that the court might think appellant had not acted in self-defense. The charge taken as a whole clearly shows that the issue was left to the determination of the jury and we think the criticism untenable.

The verdict returned by the jury reads as follows: "We the jury find the defendant, Ed Kirby, guilty of murder *in the first degree* and assess his punishment at death."

No complaint as to the form of the verdict was made at the time it was returned nor in the motion for new trial. The trial term of court adjourned on March 5. On April 26th thereafter appellant for the first time registered complaint at the form of the verdict by presenting to the court a bill of exception complaining that there is no such offense known to our law at this time as murder *in the first degree,* and now contends that the verdict as returned will not support a judgment. This is tantamount to raising in this court for the first time the question that fundamental error was committed which may be taken cognizance of by this court. We can not agree with appellant's view in this respect. The verdict was informal and the court might have corrected the same by having stricken therefrom the words "in the first degree," as first and second degrees in murder are no longer recognized in our statutes. There is no difficulty in ascertaining from the verdict that the jury found appellant guilty of *murder* and we are not of opinion that the addition of the useless words complained of would vitiate it. The court properly entered judgment thereon.

It is urged that the evidence is insufficient to support a judgment carrying the death penalty. After a careful review of all the facts we find ourselves not in harmony with this contention. The whole theory of self-defense as well as manslaughter is based upon appellant's testimony. According to his evidence his wife's threats to kill him or have him killed, in connection with her statement that the child in question was not appellant's but was begotten by another man by whom she would have another if it so pleased her, accompanied by an assault upon him with a stick made him fear for his life, and aroused in his mind such a condition as made the killing only manslaughter at most, if self-defense was lacking. It would appear from his testimony that as he retreated from his wife the axe came to his hand, not by design but providentially. The jury were not bound to accept appellant's statements as true. They were authorized to conclude that no stick figured in the killing and that the axe came into appellant's hands otherwise than as claimed by him. If they reached this conclusion then it followed that they could

logically discard his theory of the homicide. Having found against his pleas of manslaughter and self-defense the jury were within their province in assessing the death penalty. We had occasion to discuss this question at some length in Stephens v. State, 93 Texas Crim. Rep., 164, 245 S. W. Rep., 687 to which reference is here made for our further views upon the subject. See also Subia v. State, 73 Texas Crim. Rep., 407, 165 S. W. Rep., 466; Williams v. State, 76 Texas Crim. Rep., 342, 174 S. W. Rep., 1042.

Having discovered no errors in the record calling for a reversal, the judgment must be affirmed, and it is so ordered.

*Affirmed.*

## ON REHEARING.

## March 5, 1924.

MORROW, Presiding Judge.—After the end of the closing argument of counsel for the state appellant's counsel presented to the court a special charge. An exception was reserved to its refusal. The bill complaining of it states that the counsel for the state in said argument used this language:

"Gentlemen: You can not acquit this defendant unless you find that he acted as a reasonable man when he committed the homicide." The court in qualifying the bill states that he did not recall the making of such argument and that no exception was taken during the closing argument to any part of it nor was the attention of the court called to the use of the words embraced in the charge. The bill thus qualified was accepted by appellant and must by this court be taken as stating facts. The court is therefore left without any certificate that the argument was made and it is made clear that if it was made no opportunity was given at the time to either the court or counsel for the state to obviate its effect upon the jury if in fact the argument was improper. The case is not analogous to Williams v. State, 84 S. W. Rep., 231. In that case objection to the argument was made at the time of its delivery. In the present case the converse is true. An objection to argument should be made during its progress, for the reason that it may be then possible to withdraw or correct it and obviate any prejudicial effect. Weige v. State, 81 Texas Crim. Rep., 472; Harris v. State, 93 Texas Crim. Rep., 552. As said in the original opinion however the bill of exception in the present case does not show that if the argument was made that it was not a proper one.

Other questions presented in the motion for rehearing are but reiterations of points made and reviewed in the original opinion. Our

reconsideration of the matter fails to lead us to the conclusion that there was error committed or that the trial accorded appellant was other than a fair one. The evidence warrants the verdict rendered.

The motion is overruled.

*Overruled.*