DENNIS THOMPSON V. THE STATE.

*No. 364.   Decided June 13.*

1. **Rape—Indictment—Election Between Counts.**—Where an indictment for rape contained two counts: first, for rape by force and fraud; second, rape of a woman so mentally diseased as to have no will to oppose the act: *Held*, the two counts charge but different phases of one transaction, and it was not error to refuse to require the State to elect upon which count a conviction would be claimed.

2. **Same—Charge.**—On a trial for rape, under an indictment containing two counts, as set out in paragraph 1, supra, *Held*, that it was error for the court, in the charge, to submit the law applicable to the second count, where the prosecutrix herself testified, that she "fought and knocked" defendant with her hands, and that defendant told her, when he left her, that "other white girls did not tell on him, and that if she told on him he would kill her;" and where, in addition, her physician testified, "when she is cool and quiet she has very good sense." In view of this evidence (introduced by the State) in connection with the other testimony in the case, the second count was not supported by the evidence with that degree of cogency as rendered it proper for the court to submit it to the jury; and as the verdict does not specify upon which count it was based, the charge submitting this second count may have misled the jury.

3. **Same—Prosecutrix as a Witness—Competency and Sanity.**—On a trial for rape, where the charge is that the prosecutrix was so mentally diseased as to have no

will power to oppose the act, and the State makes a witness of such prosecutrix, this fact is an indorsement of her competency, and it is tantamount, in effect, to saying to the jury that the witness is now sane, and was sane at the time when the events happened of which she is called to testify.

4. **Evidence.**—See evidence summed up in the opinion, which is *held* to be insufficient to support a verdict and judgment for rape, with the death penalty assessed.

5. **Argument of Counsel.**—On a trial for rape, where the prosecuting counsel in argument to the jury said, "The friends of the prosecutrix had not in their anger taken the law in their own hands and lynched or applied the torch to defendant, therefore the life of this demon should pay the penalty." *Held*, to constitute reversible error.

APPEAL from the District Court of Walker. Tried below before Hon. J. M. SMITHER.

This appeal is from a judgment of conviction for rape, wherein the penalty is assessed at death.

Lula Sylvester, the prosecutrix, is a white woman; the defendant a negro. The salient features of the case are sufficiently stated in the opinion of the court, and it is not necessary to make any additional statement.

*W. O. B. Gillespie*, for appellant, filed an able and interesting brief in the case.

*R. L. Henry*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Conviction for rape upon Lula Sylvester; punishment, death.

The indictment contains two counts. The first count charged carnal knowledge by force and fraud, and without the consent of the woman (Lula Sylvester). The second count is drawn under the Act of April 13, 1891, which makes it rape to have carnal knowledge of a woman with or without consent, and with or without force, threats, or fraud, if the woman is so mentally diseased at the time as to have no will to oppose the act of carnal knowledge of her, knowing her to be so mentally diseased.

Counsel on the trial (the State having introduced her as a witness) moved the court to require the State to elect upon which count she would prosecute. This motion was refused. In this there was no error, there being but one transaction.

Both counts were submitted to the jury by the charge of the court. To this counsel for appellant objected, reserving his bill, arguing that there was no evidence tending to support the second count. Lula Sylvester was a witness. Bearing directly upon the question as to whether she was so mentally diseased at the time of the supposed rape as to have no will to oppose the act, she states: "I knocked and fought him with my hands. When he left me, he told me that other white girls did not

tell on him, and if I told on him he would kill me." She further states, that she did not and could not halloo because appellant had her by the throat. The physician stated, among other things: "She is worse at times. When she is cool and quiet she has very good sense, but when excited she has very little sense. She is not capable of judging of the morality or immorality of an act. She is not capable of judging of the rightfulness or wrongfulness of carnal intercourse with her person. Has hardly the will power to oppose such carnal intercourse. I have known her for four years, and she has been in such a condition since I have known her." The doctor's evidence is remarkable, indeed. "When she is cool and quiet she has very good sense." What was her condition when appellant had carnal knowledge of her? Was she cool and quiet, or was she excited? Did she then have the will power to oppose the act? If cool and quiet, she had very good sense, and certainly she was not so mentally diseased as to have no will power to oppose the act. What was the fact? Did she oppose the act? Most certainly she did. She kicked him and fought him with her hands, and would have hallooed out, but could not, because she was being choked by appellant. Opinions of witnesses must stand aside before such evidence as this; for, if appellant had carnal intercourse with this girl, she certainly opposed him in the act, if she is a competent witness. Is she a competent witness? The State said so. Her competency was indorsed by the State. When the prosecution introduced her as a witness, it said to the jury, in effect, that the witness was then sane, and was sane at the time when the events happened of which she is called upon to testify. Code Crim. Proc., art. 730. The jury were requested to hear, accept, and weigh her testimony, and, upon belief thereof, were asked to hang this appellant, which they did, and that, too, mainly, if not entirely, upon her evidence. The second count was not supported by the evidence with that degree of cogency which rendered it proper for the court to submit it to the jury, and as the verdict does not specify upon which count the jury convicted, the charge submitting this count may have misled the jury. Again, this charge is directly in conflict with the testimony of Lula Sylvester, the only witness to the transaction; for it is evident that she was mentally capable of opposing the act, notwithstanding the opinions of witnesses to the contrary. We must therefore treat this case as if there was but one count, namely, rape by force only. Neither fraud nor threats are in the case.

Lula Sylvester gave birth to a child, of whom a negro was the father. She states that the act was committed in a room adjoining one in which her mother slept; that after Dennis left she (being scared) went in her mother's room and staid all night. She did not inform her mother of the outrage, nor does her mother corroborate her as to the fact that she came into her room and staid the rest of the night. When the child

was born, and it developed that its father was a colored man, her mother asked her as to its parentage. Lula replied that its father was Dennis Thompson. But not one word was uttered tending remotely to charge rape upon any person. She did not complain of the outrage then, or at any other time, to her mother or any other person. No complaint of rape was made, so far as this record shows, until she was placed upon the stand as a witness for the State, which was about four-teen months after the transaction.

The appellant has been convicted, with the death penalty awarded against him. He must die, and this judgment rests entirely upon the testimony of Lula Sylvester, the prosecutrix, unsupported by any other evidence, and not corroborated by the circumstances. Must this con-viction stand? We are of the opinion that it should not. The crimi-native facts in this case are not so strong as in the case of Topolanck v. The State. In that case our Supreme Court (opinion by Justice Reeves) held the evidence insufficient, and reversed the judgment upon that ground. 40 Texas, 160. In that case the prosecution at-tempted to explain the silence of the prosecutrix because appellant threatened her life, and the life of her father, if she told any one of what he had done. In this case Lula states: "When he left me he told me other white girls did not tell on him, and if I told on him he would kill me." This witness does not state that she believed her life was in danger, or that she did not tell because she feared appellant would execute his threats; and if she had so stated, such a statement, under the circumstances of this case, would have been without foundation in fact. She and her mother could have rallied to her support a hundred men without the knowledge of appellant, and related the facts to them with perfect security; and they would have (believing her story) ar-rested, perhaps hanged, appellant; at least placed him in jail, beyond the power to hurt her or any person else. When she informed her mother that appellant was the father of her child, she was evidently not apprehensive that appellant would harm her. Why, if appellant had raped her, did she not mention the fact then? The State had the right and it was its duty to prove that Lula complained of the outrage. This was competent as original evidence. (Not the particulars of what she said, unless under certain circumstances.) The explanation, that she was in apprehension of harm from appellant, is absolutely without foundation.

Counsel assisting the prosecution said to the jury: "The friends of the prosecutrix had not in their anger taken the law in their own hands and lynched or applied the torch to defendant, therefore the life of this demon of human flesh on trial should pay the penalty." The State demands that persons on trial for their life or liberty shall be prose-cuted legally. It is not to the interest of the State to secure the con-viction of the accused, though they be guilty, by any method except

that which is in accord with the due and proper course of the law of the land. While the law should be enforced strictly, we understand that the enforcement of the law means to give to the State all that which belongs to her, and to the accused that which belongs to him; and if convicted, and the evidence supports the verdict, the law will be enforced. There is law for the State and law for the accused both, and the law will be enforced properly. Deny to the accused his legal rights, and the law (though he be guilty) will not be enforced.

This appellant had the right to be tried by a jury. The jury should try him without regard to what the friends of the prosecutrix had or had not done. That he should be hanged because a mob had not hanged or burnt him is monstrous indeed. Now, it is a great calamity to society for a mob composed of the people generally to hang a man. But when the courts of this State become mobs, the security to life, liberty, and property is gone, and nothing remains but chaos—anarchy.

The judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.