### JIM PRICE v. THE STATE.

*No. 1045.  Decided May 27th, 1896.*

**1.  New Trial—Practice and Duty of Trial Court.**

Though the court cannot express any opinion as to the weight of evidence nor sum up the testimony on the trial before the jury, as they are the exclusive judges of the facts; yet, on a motion for new trial, it is the duty of the court to set the verdict aside when it is contrary to the law and the evidence.

**2.  Rape—Proof of "Force."**

Rape, under our law, means the carnal knowledge of a woman without her consent, obtained by force, and such force, as might reasonably be supposed, sufficient

to overcome resistance; taking into consideration the relative strength of the parties and other circumstances of the case. And the proof of this must be made to appear beyond any reasonable doubt.

### 3. Same—Evidence Insufficient.

See, facts, stated in the opinion, proved on a trial for rape, where the conviction rests alone upon the uncorroborated testimony of the prosecutrix, which are held wholly insufficient to support a judgment of conviction for rape.

APPEAL from the District Court of Callahan. Tried below before Hon. T. H. CONNER.

This appeal is from a conviction for rape, the punishment being assessed at five years' imprisonment in the penitentiary.

The case is stated in the opinion.

*Otis Bowyer* and *John Bowyer*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

[No brief found with the record.—Reporter.]

HENDERSON, JUDGE.—Appellant was convicted of rape, and given a term of five years in the penitentiary, and prosecutes this appeal. The conviction in this case depends solely upon the testimony of Ida Crutchfield, the prosecutrix. She testified that, on the night of the 18th of January, appellant, Jim Price, and herself, went to a party at Mr. Rawson's, whose house was situated some five miles from the house of the father of the prosecutrix, where she lived; that she and the appellant went to the party on horseback, and Bill Maltby and the sister of the prosecutrix went to the party in a buggy. They returned from the party between 2 and 3 o'clock at night. On the way back, the prosecutrix and the appellant took a road through the pasture of one Tatum, and the prosecutrix's sister and Maltby went around the pasture, which was some distance further than the road through the pasture. She narrates the circumstances attending the rape as follows: "When we had gone into the Tatum pasture, and gotten about a mile or a mile and a half of my father's house, the defendant caught my horse by the bridle, and said: 'We want to stop here.' He got off of his horse on the left side, and caught hold of me, and pulled me off on the left side of my horse. He was riding on the right side of the road, and I on the left, going north. When he pulled me off my horse, while I was begging and crying, he pulled out a pistol, and said for me to quit, or he would kill me. He laid it down by us. He caught both of my hands in one of his, and held both in that way until he did what he wanted to. He pulled up my clothes, and raped me. His male organ penetrated my female organ. I did all I could to keep him from raping me. I begged him, and, while he held my hands in one of his, I shoved him as well as I could with my arms. I did not kick or scratch him. He was not bruised or scratched, as far as I know. My drawers were torn down one leg. He told me, if I told on him, he would kill my father." The prosecutrix testified that she went on home, appellant accompanying her, and that they arrived there a little before her sister and Mr. Maltby came; that she slept

with her sister that night, and said nothing about it. Said nothing to her people the next morning, and did not mention the matter until in August following, and then she mentioned it only when her sister remarked that something was the matter with her, and she then told her about the rape that had occurred in the pasture, some seven months previous. Her excuse for not telling sooner was, because the defendant threatened to kill her father if she did, and that he was a dangerous man, and she was afraid of him. On cross-examination, it was developed that, a few days after the alleged rape, she went sleigh riding with the defendant, and went again in a few days after that. The evidence shows that she continued on social relations with him, appellant living a part of the time in the neighborhood, several miles from her father's house.

All of the authorities teach that, where a case of this character rests solely upon the testimony of the prosecutrix, it is the duty of the jury to scrutinize and weigh her testimony very carefully; and in every case it is considered important as corroborative of her evidence that, soon after the alleged rape, she made complaint of the outrage. In Topolanck v. State, 40 Texas, 160, in a case very similar in its general features to the one at bar, the court uses the following language: "It would seem that the defendant was convicted alone on the testimony of the female alleged to have been injured, unsupported by other evidence, and not corroborated by circumstances. She says she told no one of what the defendant had done for several weeks, leaving it to be inferred that she had given information to some one after that time, but what it was is not disclosed. Whatever the disclosure may have been, or whoever may have been the party, the party is not named in her testimony, and not called as a witness to corroborate her statement. It was several weeks after the offense is said to have been committed, and long after she had opportunity to complain. No complaint is made until March 1, 1873, more than three months after the wrong is said to have been done, and about three months and a half before her child was born. Her long silence is perhaps intended to be explained when she says the defendant threatened her life and the life of her father if she told any one of what he had done. But it does not appear that she had any good reason for fear on account of such threats, if made. She was 21 years old, resided with her father, and was under his protection. Though she was legally competent as a witness, these circumstances diminish the credit to be given to her testimony, and leave the question of the defendant's guilt in so much doubt that the jury were not authorized to render any other verdict than that of not guilty. And though the court cannot express any opinion as to the weight of the evidence, nor sum up the testimony on the trial before the jury, as they are the exclusive judges of the facts, yet, on a motion for a new trial, it is the duty of the court to set the verdict aside when it is contrary to the law and the evidence. 2 Whar. Crim. Law., 1149; 3 Greenl. Ev., 212; Pasch. Dig., Arts. 3059, 3137, cause 9." In this case, however, instead of only three months elapsing between the alleged offense and the complaint made by the

prosecutrix, more than seven months had elapsed, and only when her condition exposed her did she state anything in regard to the matter. This long silence and the circumstances under which she made the accusation should go very far to discredit her, and to suggest that the act of carnal intercourse, if it was with the defendant at all, was with her consent. The excuse she gives, that she feared the appellant would kill her father, under the circumstances of this case, must appear very flimsy, indeed. The appellant was shown not to live in the family, and not to have any authority or control over her; and this statement of hers, as a reason for her long silence, does not comport with the integrity of a virtuous female, who has been outraged, and who is jealous of her honor. If we look to the circumstances of the outrage itself as narrated by her, they likewise appear shadowy. There was no attempt at flight, though she was on horseback. No evidence of any injury or struggle. She appears to have unresistingly submitted to being lifted from her horse, and, after the outrage was accomplished, to be lifted back again, by the destroyer of her innocence, to have accepted his escort to her home, and to have gone with him on two sleigh rides a few days afterwards; and all this without any suggestion that he had demeaned himself towards her in any other wise than a manner which met her approval. Under all of the facts of this case, it occurs to us that the lower court should have unhesitatingly granted a new trial in this cause. Although a stricter rule prevails here with reference to a new trial than in the lower court, yet, from the record in this case, we cannot permit this verdict to stand. Under the laws of this State, rape means "the carnal knowledge of a woman, without her consent, obtained by force, and such force as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case." And the proof of this must be made to appear beyond any reasonable doubt. See, Thompson v. State, 43 Texas, 583; Thompson v. State, 33 Tex. Crim. Rep., 472; Rhea v. State, 30 Tex. Crim. App., 483; Shields v. State, 32 Tex. Crim. Rep., 499; Dockery v. State, 35 Tex. Crim. Rep., 487; State v. Patrick (Mo. Sup.), 17 S. W. Rep., 677; State v. Scholl (Mo. Sup.), 32 S. W. Rep., 968. Because the evidence in this case fails to sustain the verdict, the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*