## J. K. SIMMONS V. THE STATE.

### No. 7063.   Decided February 14, 1923.

**1.—Threats—Extortion—Indictment.**

Where, upon trial of a violation of Article 1328 P. C., as to threats and extortion, the indictment followed approved precedent, there was no error in overruling a motion to quash.    Following Williams v. State, 13 Texas Crim. App., 285, distinguishing Scales v. State; 65 Texas Crim. Rep., 355.

**2.—Same—Election by State—Rule Stated.**

Where only one transaction was under investigation involving a threat to injure character on the one hand and a threat to injure the person on the other, both uttered in the same conversation, there was no error in overruling a motion to elect.

**3.—Same—Evidence—State of Mind.**

Where the injured party testified in detail as to the threats made against him by defendant and that the latter had a pistol at the time, and the witness was afraid he would kill him, adding that he knew defendant had been drinking, there was no reversible error.

**4.—Same—Evidence—Conversation—Declarations of Defendant.**

Where a State's witness testified that he had a conversation with defendant about the latter's wife and the party injured, and that later in a second conversation the defendant declared that what he had said in the first conversation about his wife was not true, etc., an objection on the ground that the conversation did not refer to the matter under investigation was properly overruled.

**5.—Same—Evidence—Declarations by Defendant.**

. Where the conversation testified to by the State's witness as to what he heard defendant say to the party injured was about the very money obtained by threats, and showed in connection with the testimony of the party injured that defendant was trying to induce the party injured to swear that he had loaned the money to defendant, which was brought out in redirect examination, there was no reversible error.

**6.—Same—Evidence—Impeaching Witness.**

.Where defendant's witness gave testimony to impeach a State witness and upon cross-examination was asked by the State how many appearance bonds he was then on for defendant, to which objection was sustained, there was no error.

**7.—Same—Evidence—Motive—Circumstantial Evidence.**

Where defendant's wife was on the witness stand and she was asked upon cross-examination if she had not taken the very money and note which had been obtained from the party injured by her husband and used it to buy an automobile, which she denied, but admitted that the bill of sale for the automobile was made to her, there was no error in overruling an objection thereto, as the State claimed a conspiracy between the witness and her husband.

**8.—Same—Evidence—Practice in Trial Court.**

Where defendant complained that the answers of a certain State's witness were not responsive to the question and as an excuse for not having objected thereto said that to have done so in the presence of the jury would have added to his injury, there was no reversible error, as defendant could not thus excuse himself.

**9.—Same—Requested Charge—Argument of Counsel—Bills of Exception—Practice in Trial Court.**

This court will not tolerate the practice to permit a trial judge to enforce a rule that while the State's attorney is addressing the jury he cannot be interrupted by opposing counsel in order to make objections to his argument, but counsel may be allowed to do so after the trial, etc., when he could file his exceptions, which was done in the instant case, and such bills cannot be considered for review on appeal. Following Spears v. State, 91 Texas Crim. Rep., 51, and other cases.

Appeal from the District Court of Jones. Tried below before the Honorable W. R. Chapman.

Appeal from a conviction of threats and extortion under Article 1328 P. C.; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*T F. Hunter* and *J. E. Robinson,* for appellant. On question of insufficiency of indictment, Ramsey v. Arnott, 64 Texas, 320; Doyle v. State, 37 id., 359, and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, Judge.—Conviction is under Article 1328 of our Penal Code. Punishment assessed was four years in the penitentiary.

Article 1328, P. C. is as follows:

"If any person, by threatening to do some illegal act injurious to the

character, person or property of another, shall fraudulently induce the person so threatened to deliver to him any property, with intent to appropriate the same to his own use, he shall be punished by confinement in the penitentiary not less than two nor more than five years."

The count in the indictment upon which conviction was had alleges, omitting formal parts:

"——did then and there unlawfully threaten to do an illegal act injurious to the character of R. J. Reynolds, to wit: The said J. D. Simmons did then and there unlawfully threaten and say to the said R. J. Reynolds in substance: 'You (meaning the said R. J. Reynolds) have been f—— my wife and unless you pay me the sum of Five Hundred Dollars, I will expose you and prosecute you;' (meaning by the said language 'You have been f—— my wife' that the said R. J. Reynolds had been having habitual carnal intercourse with one Pearl Simmons who was then and there lawfully married to him, the said J. K. Simmons, and that the said Pearl Simmons was then and there a woman and not the wife of the said R. J. Reynolds; (and meaning by the language 'I will expose you and prosecute you,' that he, the said J. K. Simmons, would publicly accuse the said R. J. Reynolds of adultery with the said Pearl Simmons, the wife of the said J. K. Simmons, and would file a charge against him, the said R. J. Reynolds, charging him in the courts with the offense of adultery with the said Pearl Simmons, wife of the said J. K. Simmons). That in truth and in fact, the said R. J. Reynolds had not had carnal intercourse with the said Pearl Simmons, the wife of the said J. K. Simmons, and the said charge, to wit, 'You have been f—— my wife,' then and there made by the defendant J. K. Simmons against the said R. J. Reynolds was wholly false. And the said J. K. Simmons did then and there by the means aforesaid and with the intent to appropriate the same to his own use fraudulently induce the said R. J. Reynolds to deliver to him, the said J. K. Simmons, Two Hundred Dollars in money, the same then and there being the property of the said R. J. Reynolds."

The second count alleges that appellant threatened to kill Reynolds, and by means thereof secured two hundred dollars.

. The court properly overruled the motion to quash the indictment. The averments are in accord with the essential principles announced in Williams v. State, 13 Texas Crim. App., 285, and the approved forms. If the language used by appellant was subject to any ambiguity, it was clarified by the innuendo averments, which were justified from the actual language set out. Scales v. State, 65 Texas Crim. Rep., 355, 144 S. W. Rep., 263, is cited by appellant in support of his motion. The indictment in that case was clearly insufficient, but the pleader in the instant indictment appears to have overcome the defects pointed out in Scales' case.

After both sides had closed their testimony appellant requested the court to compel the State to elect upon which count it would seek con-

viction. The request was denied and both counts were submitted; the verdict was upon the first count. The case did not present a state of facts calling for election. Only one transaction was under investigation, involving a threat to injure character on the one hand, and a threat to injure the person on the other, both uttered in the same conversation. For collated authorities see Section 444, page 58, Branch's Ann. P. C.

R. J. Reynolds was a merchant in Haskell. He had a wife and children. Appellant was also a married man with a wife and children. His family had been trading at Reynold's story for some time. On the day of the alleged offense one Mr. Whitman telephoned Reynolds to come over to his (Whitman's) place of business. When Reynolds reached there he found appellant present, who motioned to Reynolds and they went to the back of the store and up on what was called a "deck." Appellant accused Reynolds of having had carnal intercourse with appellant's wife, which Reynolds denied. Appellant finally told Reynolds that he had to have five hundred dollars out of him and that if he did not get it he was going to indict him and expose him and ruin him and his family. He also told him if he did not pay this five hundred dollars he would kill him. Upon being told by Reynolds that he did not have the five hundred dollars appellant told him he could get it. Reynolds went to the bank and secured two hundred dollars. Appellant was owing an account for $114 at this time. Reynolds deducted this from the other three hundred dollars and executed a note for the balance, making it payable to Mr. Collier who worked in the store, and directed Collier to transfer the note to appellant, which was done. Reynolds claims he paid this money and executed the note because he was afraid appellant would file a prosecution against him and ruin him and his family, and also because he was afraid appellant would kill him. He denied that he had ever been criminally intimate with Mrs. Simmons. Appellant did not testify himself, but Mrs. Simmons asserted that Reynolds had been having carnal relations with her. She did not bear up very well under cross-examination. She admitted that long after she claimed Reynolds made the first improper proposal to her that she continued to trade with him at the store although he told her at that time, so she says, that if she did not submit to him he would not extend them any further credit. The State put in evidence admissions of appellant to the effect that what he had been claiming as to the relation between Reynolds and his wife was not true, but that he needed the money. A more extended statement of the facts is uncalled for. The evidence amply supports the verdict.

After Reynolds had testified in detail as to the threats made against him by appellant, and that the latter had a pistol at the time, the witness stated that he was afraid appellant would kill him, saying, "I knew he had been drinking." Exception was reserved to the last statement. It was admissible, being pertinent as showing the probable

state of mind of appellant, and why Reynolds was afraid the threat might be executed.

Hunt testified that he had a conversation with appellant about his wife and Reynolds. Later appellant told him what he (appellant) had said about his wife was not true, that she did not do what he had claimed she did. At the time of the second conversation witness had heard about appellant getting money from both Reynolds and Whitman, and asked appellant if what he claimed about his wife's relations with them were not true why he took the money and his reply was because "he needed it." In this same conversation, referring to Reynolds and Whitman, appellant said, "I got two of the s— of a b—— yesterday for a thousand dollars, and I am going to get some more of them too." Objection was interposed on the ground that the conversation did not refer to the matter under investigation. While the witness's statement as to the time the conversation occurred is somewhat confused, the whole of his testimony, together with the trial court's explanation to the bills, show with certainty that it did refer to the very matter being investigated.

No error was committed in permitting Collier to testify that he heard appellant say to Reynolds, "You tell them I borrowed this money from you." This was some time after the money had been secured. The conversation was about the very money obtained by the threats, and shows in connection with Reynolds' evidence that appellant was trying to induce Reynolds to swear he had loaned it to appellant. In another bill complaint is made because Collier was permitted to testify to some statement made to him by Reynolds at the time he directed witness to transfer the note to appellant. Collier was a State's witness. He was not asked about this conversation on direct examination. Part of it was developed on cross-examination. In re-direct the State elicited the portion objected to. This was not error. (Code Criminal Procedure, Article 811).

Appellant placed W. W. Pearsey on the stand to impeach one of the State's witnesses. On cross-examination he was asked how many appearance bonds he was then on for appellant. Objection was sustained and no answer given. This presents no error. He may have been on the bond in this particular case and no other. The question as framed was not an assertion, as is contended, that appellant was under other indictments.

While Mrs. Pearl Simmons (appellant's wife) was on the witness stand she was asked on cross-examination if she had not taken the very money and note which had been obtained from Reynolds and used it to buy an automobile. She denied this, but admitted that the bill of sale for the automobile was made to her. Objection was urged on the ground that the purchase of the automobile was no part of the alleged offense for which appellant was upon trial, but was an entirely separate transaction and that the only effect that such proof could

have would be to improperly prejudice the rights of appellant. Mrs. Simmons testified that Reynolds had in fact had carnal relations with her. As to whether this was true was a vital issue to be settled by the jury. It was the theory of the State that this was a fabrication; that appellant and his wife had conspired together to obtain the money from Reynolds and others with which they purchased an automobile, and that Mrs. Simmons knew how the money had been obtained at the time she paid it over for the car. Under such circumstances we observe no impropriety in inquiring about her conduct relative to the purchase of the car in question.

Bill of exception number twenty-six presents no error. The qualification thereon shows statements made by the witness Hunt which were therein complained of were elicited on cross-examination. The complaint is made that the answers were not responsive. As an excuse for not having objected thereto it is asserted that to have done so in the presence of the jury would have added to the injury. Appellant can not thus excuse himself. He should have attempted to obviate the harm as much as possible by requesting the court to instruct the jury to disregard it, and he can not excuse himself on his assumption that to have made such request would have only added to the supposed injury.

We find in the record thirty bills of exception to argument of the attorney representing the State. Some of them select certain portions of the argument; others include in the bill page after page thereof. We find substantially this language in all of them:

"And the defendant at the time said statement and argument was made by said prosecuting attorney objected thereto and to each and every statement thereof and asked that the jury be instructed not to consider the same, and asked that counsel be instructed to refrain from making improper argument, which the court declined and refused to do, to which action of the court the defendant then and there in open court excepted."

The court appends the following qualification to each of them:

"That while Joe C. Randel, District Attorney, was making the opening argument for the State, Mr. Hunter, attorney for the defendant, approached the Court and asked the Court. if it was his practice to have the speaker interrupted in order to make objections to his argument, and the Court told Mr. Hunter that in view of the fact that he was having the speeches taken by the Court Reporter that it would not be necessary to interrupt the speaker and that he could except to all or any portion of the speeches that he desired to, and after this nothing more was done nor said about speeches of State's counsel until the bills of exception were presented to the court, except that several days after court adjourned there was presented to the court thirty-one special instructions to the jury not to consider argument of State's counsel."

Manifestly these bills cannot be considered as bringing forward for review a failure to instruct the jury not to consider argument when no such request was made until more than a month after the jury had been discharged and after court had adjourned. The question remains whether under the circumstances the bills should be considered at all as attempting to reserve exceptions to argument. It is apparent that counsel recognized the proper procedure would have been to make his objection and secure the ruling of the court at the time the supposed objectionable argument was made, because the bills state that this was done; but we are bound by the certificate of the judge which contradicts that recital. In Weige v. State, 81 Texas Crim. Rep., 476, 196 S. W. Rep., 524, practically the same question was presented from a different angle. There the trial judge had established a rule which prohibited counsel from making objection to argument in open court but required the objection to be made in a whisper to him. Commenting thereon this court said:

"While the judge trying the case has large authority to make rules for the government of his court which are not inconsistent with statutory or constitutional provisions, or the rules made by the Supreme Court, and it is highly commendable that such action should be taken in order that decorum may be maintained and that the litigants and attorneys may know in advance the rules they are expected to observe, we are inclined to believe, however, that in making and enforcing the rule in question the trial court exceeded his authority.

"The right to be heard by counsel and a speedy public trial is guaranteed by the Bill of Rights. Art. 1, sec. 10. Constitution. While recognizing the sound and wholesome discretion vested in the trial judge in the conduct of trials, the appellate courts have been careful in safeguarding these constitutional rights. Patterson v. State, 60 S. W. Rep., 560; Reeves v. State, 34 Texas Crim. Rep., 483; Roe v. State, 25 Texas Crim. App., 33; Lott v. State, 18 Texas Crim. App., 627.

"The cases mentioned above in which reversals have resulted from improper arguments are but illustrative of the practice in this court as will be indicated by numerous authorities cited under article 724, Vernon's C. C. P. To bring the ruling of the trial court before this court for review, a bill of exceptions is generally required. Art. 744, C. C. P. And this is true with reference to the argument of attorneys. Vernon's C. C. P., p. 641, subdiv. 28, and cases cited. By articles 2066 and 2067, Revised Civil Statutes, provision is made for the preservation of a bill of exceptions showing the ruling of the court by the testimony of bystanders where the counsel presenting the bill and the court fail to agree as to what proceedings took place. See decisions of this court construing these statutes. Vernon's C. C. P., p. 558, subdiv. 39; Washington v. State, 58 Texas Crim. Rep., 345, 120 S. W Rep., 917; Wooten v. State, 57 Texas Crim. Rep., 89, 121 S. W. Rep., 703.

"It is self-evident that a compliance with the terms of these statutes would be impracticable under the operation of the rule referred to in the bill of exceptions under discussion. Under its operation none but the trial judge and the attorney whispering the objection to the judge would be in a position to know what objections were made and to what subject matter they related or what ruling the court made thereon. So that if in preparing a bill of exceptions there was a disagreement between the attorney and the trial judge as to the terms of the objection or its subject matter or ruling, it would be futile for the attorney to call upon bystanders to settle the dispute, because they would be perforce of the rule in ignorance of the proceedings, and the litigant would be driven to accepting the bill of exceptions in the terms that the court prepared it, or consent to such qualification or modification of it that the court might make."

Much the same question was considered in the more recent case of Spears v. State, 91 Texas Crim. Rep., 51, 237 S. W. Rep., 270, in which the Weige case (supra) was followed. We appreciate the courtesy prompting an attorney to refrain from interrupting opposing counsel during argument. If the argument is legitimate he ought not to be interrupted; but if objectionable the complaint should be made promptly at a time when the trial judge can correct as far as possible the effects of any transgression of the rules. If an improper argument is made unwittingly, and counsel's attention is called thereto, it is frequently within his power to correct it himself. So it appears not fair either to counsel or the trial court to sit silent through an argument, and long after opportunity is past for either counsel or the court to correct a supposed grievance, to then lodge complaint. We cannot commend such practice. It is not in consonance with orderly procedure for the reasons given in the Weige and Spears cases (supra). Conceding to counsel and the trial judge in the instant case the utmost good faith, yet we must decline to consider the bills.

The judgment is affirmed.

*Affirmed.*