# APRIL, 1925.

GEORGE DAVIS v. THE STATE.

No. 8583.   Delivered April 8, 1925.

Rehearing denied State, May 20, 1925.

1.—Rape—Witness—Mental Competency.

Where the mental capacity of a witness is questioned and after an examination by the trial court she is held competent to testify, unless a clear abuse of his discretion is shown, his ruling will not be disturbed on appeal. See Art. 788, C. C. P. Following Nicholas v. State, (No. 9240, opinion by this court delivered March 25, 1925) and cases and authorities cited therein.

2.—Same—Witness—Competency of—How Shown.

Prosecutrix in this case, Onay Parker, was twenty-two years old, and mentally abnormal. In her examination as to her competency as a witness, it was disclosed that one of the attorneys, acting as counsel for the prosecution had informed her with reference to the punishment that might follow, if she testified falsely. This was not improper. Following Anderson v. State, 88 Tex. C. R. 307, 266 S. W. 414 and authorities there cited.

3.—Same—Evidence—Hearsay—Properly Excluded.

That an uncle of prosecutrix told Dr. Mosely, some months after the commission of the alleged rape, that prosecutrix was an idiot, was hearsay, and the court properly excluded it.

4.—Same—Evidence—Opinion of Witness—Properly Excluded.

Appellant complains that he was not permitted to prove by Dr. Mosely that a man could not rape a woman without rendering her unconscious in some way, and that all medical authorities were in perfect agreement and acaccord with this opinion. This evidence was very properly excluded, for reasons too numerous to set forth.

5.—Same—Argument of Counsel—Objection to—Not Properly Presented.

Where appellant complains of the argument of State counsel, but his bill does not show that any objection was made to the argument at the time it was made, and no request presented that it be withdrawn, and was called to the attention of the court for the first time in his motion for a new trial, the objection thus made to argument comes entirely too late. Following Sims v. State, 93 Tex. C. R. 421, and other cases cited.

6.—Same—Evidence—Leading Questions—When Permissible.

Leading questions are permissible, where a witness is hard of hearing, or deaf, or illiterate or where the vocabulary of the witness is limited. Following Carter v. State, 127 S. W. 215, also see Underhill on Crim. Ev. p. 478, Branch's Ann. P. C. paragraph 7, note 157. In the instant case the obvious undeveloped mentality of prosecutrix, authorized leading questions to be propounded to her.

7.—Same—Bills of Exceptions—When Incomplete,—Not Considered.

Where a bill of exception complains of the introduction of testimony of the father of prosecutrix taken on the examining trial, but does not set out the purported evidence, it presents nothing for our consideration. See Branch's Ann. P. C. paragraph 4, Sec. 210.

8.—Same—Indictment—Allegata and Probata.

Where an indictment charges rape by force, and without the consent of prosecutrix, the proof must sustain the allegation. Notwithstanding any mental deficiency of prosecutrix, the state is held to the same degree of proof as in other cases. Slight force however in the instant case, would have overcome any resistance which prosecutrix was able to make in her physical condition, but want of her consent was necessary to be established, and beyond a reasonable doubt.

9.—Same—Continuance of Subject.

A conviction will not be sustained on the uncorroborated testimony of a woman who waits too long before she announces her decision that she has been raped, especially if she has met persons who would give her protection, or where she went with defendant after the supposed rape, or where her pregnancy, or being detected in the act was the motive for her statement. See Branch's Ann. P. C., paragraph 6, page 102. Following Price v. State, 36 Tex. C. R. 144 and other cases cited.

10.—Same—Evidence—Want of Consent—Must be Established.

Where the prosecutrix failed to report the alleged rape, claimed to have been effected by force, and without her consent until after the state of pregnancy was far advanced, and could no longer be concealed, we cannot give our consent to an affirmance of this judgment. If prosecutrix was a competent witness (and she was so held and testified) and had the mental capacity to withold her consent, she also had mental capacity to give it.

11.—Same—Evidence—Insufficient.

ON REHEARING.

The somewhat peculiar nature of the facts in this case, invited the most careful attention of the court, both in the preparation of the opinion, and in consultation. The state now moves for a rehearing and affirmance. It cannot be granted. This case is but another illustration of the necessity of the courts, in the disposition of matters before them, to be governed by the law, as understood by them, and not allow sentiment in particular cases to render uncertain and insecure, wholesome and sound principles, which are conducive to the proper administration of justice.

Appeal from the District Court of Marion County. Tried below before the Hon. R. T. Wilkinson, Judge.

Appeal from a conviction of rape; penalty, twelve years in the penitentiary.

The opinion states the case.

*E. B. Lewis, L. S. Schluter,* of Jefferson, for appellant.

*T. D. Rowell,* of Jefferson, *Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

HAWKINS, JUDGE.—Defendant was charged by indictment with having committed the offense of rape upon one Onay Parker in having carnal knowledge of her by force and without her consent. He was convicted and his punishment assessed at confinement in the penitentiary for twelve years.

After the trial was concluded appellant attacked the indictment, averring that it purported to be found by a grand jury organized at the November term, 1922, but that by indorsement upon the back thereof the indictment shows not to have been returned and filed until November 24, 1923, long after the grand jury which purported to have found it had been discharged. The court below was requested to send up the original indictment and the capias for our inspection. After inspection we regard the objection as hypercritical. It is perfectly apparent from an inspection of said documents that it was the custom of the clerk to place a comma after the dates written by him, and that in placing the comma after the date 1922, it was so placed as to make it appear in some instances as a part of the last 2, and makes it resemble the figure 3. The court properly overruled the contention.

In bill of exception number one complaint is made of the ruling of the court holding the witness Onay Parker competent to testify. Defendant asserted that she was not a competent witness because of her mental condition, and did not understand the nature and obligation of an oath. The jury was retired and these matters investigated before the learned trial judge. Article 788, C. C. P. in part provides:

"Children or other persons who, after being examined by the court, appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated, or who do not understand the obligation of an oath are not competent witnesses.

We quote from the opinion in Nicholas v. State, (No. 9240, opinion March 25, 1925.)

"The competency of a witness is primarily a matter to be determined by the judge presiding at the trial of the case, and his ruling will not ordinarily be overturned unless it appears that in accepting the evidence judicial discretion was abused. Hawkins v. State, 27 Tex. Cr. App. 273; Charles v. State, 81 Texas Crim. Rep. 457; Anderson v. State, 88 Texas Crim. Rep. 307.

"In testing the competency of a child witness, the law permits the use of simple words and does not demand that a child possess or comprehend a vocabulary such as would be expected of an adult. The test applied is not the age but the intelligence of the child. See Underhill on Crim. Ev., 3rd Ed., Sec. 331. The ability to give a clear and concise recital of the events and knowledge of the fact that falsehood will entail punishment are cogent factors supporting the theory of competency. Valdez v. State, 71 Texas Crim. Rep. 487; Anderson v. State, 88 Texas Crim. Rep. 307; Underhill on Crim. Ev., 3d Ed., Sec. 331; Carter v. State, 87 Texas Crim. Rep. 299. The fact that a child has been instructed touching the nature of an oath does not render it an incompetent witness. Wharton's Crim. Ev. Vol. 1, p. 745, 16 Am. & Eng. Ency. of Law, 2d Ed., p. 227; Anderson v. State, 226 S. W. 414."

Onay Parker was twenty-two years old. In testing her competency two physicians were examined who expressed the opinion that she had an undeveloped brain. One of them thought she did not have mental capacity to understand the obligation of an oath. This physician had theretofore examined her to ascertain if she was pregnant, but had never talked to her with a view of testing her mental condition. He judged from her looks and manner that she had a brain developed about like a ten year old child. The witness herself was examined before the court. At his direction her entire examination is brought forward with the question and answers. We think it unnecessary to set them out in detail in this opinion. She seemed to understand all questions which were not involved and which were couched in simple language, and made answers (partly in words and partly by signs) which appeared to be intelligible and in response to the questions propounded. It appears from her examination that one of the attorneys acting as counsel for the prosecution had informed her with reference to the punishment that might follow if she testified falsely. Under the authority in Anderson v. State, 88 Texas Crim. Rep. 307, 226 S. W. 414 and the authorities therein cited there appears no impropriety in this. We observe nothing which shows only abuse of discretion on the part of the court in holding the witness competent.

Defendant offered to prove by the witness Dr. Moseley that when the father of prosecutrix brought her to him for examination some months after the commission of the alleged rape that Butch Gray, an uncle of prosecutrix, accompanied them; and that Gray said, "she was an idiot." Butch Gray was not used as a witness by either the State or defendant. The testimony offered through Dr. Moseley was purely hearsay and properly excluded.

The defendant offered to prove by Dr. Moseley, who was a practicing physician of more than 30 years experience, that "he was of the

opinion that a man could not rape a woman with rendering her unconscious by a blow or the use of some anesthetic, and that all medical authorities were in perfect agreement and accord with this opinion.''

This evidence was excluded. Defendant has not favored us with any authority holding such testimony to be admissible. We know of none which authorizes the reception of expert testimony upon such an issue.

Defendant complains of certain argument made by counsel representing the state. The bill does not show that any objection was made to this argument at the time it occurred. The court certifies that no request was presented to withdraw it. There is nothing in the record to indicate that objection of any kind was intimated to the court prior to filing the motion for new trial. Objection thus made to argument comes entirely too late. Simmons v. State, 93 Tex. Cr. R. 421; 248 S. W. 392; Harris v. State, 93 Tex. Cr. R. 544; 249 S. W. 485; Kirby v. State, Tex. Cr. R. —, 258 S. W. 822.

Complaint is made that counsel for the state was permitted to ask prosecutrix leading questions. The evidence shows this witness to have been afflicted from birth by some physical infirmity which prevented her from articulating plainly. She appeared to understand all questions that were asked her. Some she could answer by words in a way to be understood. In replying to other questions it was necessary for her to resort to signs in connection with words she could speak to make herself understood. By reason of this infirmity she had never gone to school and her vocabulary was limited. As one of the exceptions to the rule excluding leading questions Mr. Underhill in his work on Criminal Evidence, §344, at page 478, says they are admissible where persons are hard of hearing, or deaf, or illiterate or stupid; they are also admissible where the witness' vocabulary is limited (Carter v. State, 127 S. W. 215). Other authorities will be found collated under paragraph 7, §157, Branch's Ann. P. C.

Bill number ten contains complaint that the state was permitted to introduce what purported to be the evidence of Walter Parker the father of prosecutrix, taken on the examining trial. This bill is defective and can not be considered because the purported evidence on the examining trial is not set out in the bill. Where complaint is made of the admission of testimony a bill of exception is defective which fails to set out the evidence admitted over objection. For authorities collated see paragraph 4, § 210, Branch's Ann. P. C.

Miss Onay Parker, the prosecutrix, is shown to have been twenty-two years of age. From birth she had been afflicted with some trouble which interfered with her speech. Her arms and hands seemed to be partially paralyzed. She could get her clothes on but

could not fasten them, and was unable to dress and undress her baby. She appeared to have no trouble in communicating with those who were accustomed to talk with her, and could make the members of her family understand apparently without much trouble. The witness Colgin testified that he had known her quite a long time; that she knew what was said to her; that he had talked to her many times. Another neighbor testified that she could not articulate well but could talk some, and understand thoroughly what people said to her and what they did around her; that she had about the same intelligence as an eight or nine year old child. She testified before the court upon preliminary examination as to her competency and both in that examination and in her evidence given before the jury appeared to understand all questions that were asked her and answered them with fair intelligence. She said that on one occasion when her father, brother and sister, were at work in the field while she was at home alone defendant came to the house, placed her on the bed, pulled up her clothes and had intercourse with her; that she tried to push her clothes down and tried to push him away but without success. It was her testimony that this was repeated by defendant on two other occasions, how long after the first, and the interval between the last two, she was not able to give. She claims that the other acts of intercourse occurred under circumstances similar to the first. She claims not to have given consent to any of them. No complaint was made by her to any member of her family about the conduct of defendant. It was not known that anything of the kind had occurred until she was so far advanced in pregnacy that her condition became noticeable. When her father inquired about her condition she appears to have had no trouble in making him understand that she charged defendant with being the cause of it. Defendant lived some three hundred yards from the home of the Parkers. He was an unmarried man living with his cousin. He was a close friend of the Parker family, and had accustomed to be at their house frequently, coming and going largely as a member of the family. It was in evidence through a younger sister of prosecutrix and her brother that on more than one occasion when they would be coming from the field when prosecutrix would be at the house by herself they had seen defendant leaving the house, but nothing was thought of it, and no suspicion was attached to his actions. The State undertakes to explain the failure of prosecutrix to report the alleged rape because of the deafness of her father, because her sister was younger than she, and from the natural timility of reporting such a matter to her brother. The evidence is conflicting as to the extent of the deafness suffered by her father, the members of her family claiming that he was almost totally deaf; some of his neighbors testified, however, that he talk-

ed to his family and could read the lip movements of those with whom he associated, and had no difficulty in understanding what they were saying and communicating with them. He testified as a witness upon the trial. If there was anything unusual in the method of conducting his examination it does not appear from the record. There is some conflict in the testimony as to just when prosecutrix conveyed the information to her family claiming that defendant was guilty of rape. Her father took her to a doctor to be examined in order to satisfy himself as to her condition of pregnancy. She claims to have told him that defendant was the cause of that condition as they returned from the visit to the doctor. Her brother testified that she first told his father about the matter at the house; that his father came to the field and conveyed the information to him, and that he then went to the house and talked to his sister when she repeated to him what she had previously told their father. Defendant denied any improper relations with the girl whatever. He admitted that he was a frequent visitor at the home of the Parkers; that he was on goods terms with the family; that he had gone to the house many times when other members of the family were absent and only prosecutrix present, but that on such occasions he did not remain long, and never thought of having any improper relation with prosecutrix. Defendant lived with his cousin (Ben Davis) who had a son, Frank Davis, sixteen years old. Frank Davis testified that he and Dean Parker were chums; that about two years before the trial the sister of prosecutrix had come to the Davis home on one occasion when Mr. Parker was not at home; that in going to see if any stock was in the field witness passed the Parker house and stopped to see Dean Parker, prosecutrix's brother. Witness claims that upon this occasion he saw Dean Parker and prosecutrix in the act of intercourse. This was denied by both Dean Parker and prosecutrix. The evidence of Frank Davis came in such a way and was met by the state in such a manner that the jury was justified in not giving credence to it.

The court was requested to give a peremptory instruction directing the jury to return a verdict of acquittal, and it is now insisted here. as in the trial court, that the evidence is not of such character as will justify this conviction standing. When Mr. Parker first became aware of the situation he made a complaint charging defendant with rape upon a woman so mentally diseased as to have no will to resist the act of carnal knowledge. However, the prosecution did not proceed upon this theory. Whether after investigation the state decided that a prosecution based upon such an allegation could not be sustained is only a matter of conjecture, but when the indictment was returned it charged that appellant *by force and without the consent* of prosecutrix had carnal knowledge of her. The averment

of "want of consent" must be established. Necessarily, if consent was given no such rape as is charged in the indictment occurred. When the state tendered prosecutrix as a witness it thereby vouched for her competency, not only to testify in the case, but also vouched for her mental capacity to withhold or give consent to such act of carnal knowledge. Defendant challenged her competency. After an investigation the learned trial judge held her competent. Under these circumstances, and with a natural tendency to sympathize with prosecutrix because of her unfortunate physical defects, it had been with reluctance we make application of the rule long recognized where there is a failure of the woman claiming to have been forcibily ravished, to make complaint thereof. If the issue of consent could be eliminated the question of force would not disturb our minds. The record indicates that only slight force would be necessary to overcome any resistance which prosecutrix was able to make in her physical condition. Under the allegation in the indictment the case turns, we think, upon the question of consent. Many cases will be found collated under paragraph 6, on page 102, Branch's Ann. P. C. supporting the proposition that:

"A conviction will not be sustained on the uncorroborated testimony of a woman who waits too long before she announces her decision that she has been raped, especially if she has met persons who would give her protection, or where she went with defendant after the supposed rape, or where her pregnancy or being detected in the act was the motive for her statement."

If these acts of intercourse testified to by prosecutrix occurred upon the occasions when the sister and brother saw defendant leaving the house as they were returning from the field there was nothing in the condition of prosecutrix which called their attention to the fact that anything of an unusual character had taken place. It is not claimed by prosecutrix that defendant made any threats against her or even cautioned her not to report the matter. Whenever such acts took place we observe no reason why prosecutrix could not have reported the matter to the members of her family. She had no difficulty in making the court and jury understand her, and could have made the members of her family understand that something of an unusual character had transpired, and by the use of words which seemed to be at her command and signs to which she resorted would have had no trouble in identifying then the party she claims to have so assaulted her as well as when giving evidence in court. We find one expression in the testimony of prosecutrix both before the court upon her preliminary examination and before the jury which may throw some light upon the subject under discussion. Upon both occasions she testified that she did not know the acts she claimed defendant to have committed to have been wrong.

If she did not know they were wrong this might explain why she made no report of it; but this would go to her mental status and does not aid us under the character of rape charged in the indictment. As was said in Terry v. State, 266 S. W. 511:

"Where concealment of the alleged transaction extends to a time when circumstances render it impossible to hide it longer, the potency as against the idea of force is enhanced."

And this is true also as it relates to the idea of consent. We refer to the authorities cited in Terry's case (*supra*) and also to the many cases upon the subject collated under paragraph 6, page 102, of Branch's Ann. P. C. and especially to Price v. State, 36 Tex. Cr. R. 144; 35 S. W. 988; Tittle v. State, 38 S. W. 202; Kennon v. State, 42 S. W. 376; Thompson v. State, 33 Tex. Cr. R. 475, 26 S. W. 987. The reasoning of Judge Hurt in the case last cited appears pertinent here. There the indictment contained two counts, one for rape by force, the other upon a woman so mentally diseased as to have no will to oppose the act of carnal knowledge. It was stated in the opinion that when the state tendered the prosecutrix it was a practical abandonment of the last count, and in referring to her testimony as it relates to the first count charging rape by force without consent the court says:

"Is she a competent witness? The state said no. Her competency was indorsed by the state. When the prosecution introduced her as a witness, it said to the jury, in effect, that the witness was then sane, and was sane at the time when the events happened of which she is called upon to testify. Code Cr. Proc., art. 730. The jury were requested to hear, accept, and weigh her testimony, and, upon belief thereof, were asked to hang this appellant, which they did, and that, too, mainly, if not entirely, upon her evidence."

Without a departure from the long line of cases from our own court holding that a conviction will not be permitted to stand where there has been a failure to report an act of intercourse claimed to have been effected by force and without consent until after the state of pregnacy is advanced until it can no longer be concealed we can not give sanction to an affirmance of this judgment. We can not escape the force of the contention that if prosecutrix was a competent witness, (she being over the age of consent), and had mental capacity to withhold consent to an act of intercourse, she also had mental capacity to give it, and her failure to report the matter brings the case in line with the Terry case (*supra*) and the many others referred to, and calls for a reversal of the judgment.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*

100 Tex. Crim.—40.

ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—The somewhat peculiar nature of the facts in this case invited the most careful attention of the court, both in the preparation of the opinion and in consultation. The case received minute examination and deliberate consideration. The conclusion was reached with some degree of reluctance and was not announced without the feeling of the utmost assurance that no other disposition of the case could be made without doing violence to sound and firmly established rules of law. To overturn or impair them by making an exception would, in our opinion, be far more detrimental to the public interest than a reversal of the judgment. This is but another illustration of the necessity of the courts, in the disposition of the matters before them, to be governed by the law as understood by them, and not sentiment in particular cases to render uncertain and insecure, wholesome and sound principles which are conducive to the proper administration of justice.

For the reasons stated in the original opinion, the motion for rehearing is overruled.

*Overruled.*