## E. L. GRAY V. THE STATE.

No. 18274. Delivered April 29, 1936.

The opinion states the case.

*Frank Judkins,* of Eastland, and *Ghent Sanderford,* of Austin, for appellant

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for rape, punishment assessed being five years in the penitentiary.

Appellant's main contention here is, and was in the court below, that the evidence is not sufficient to sustain a conviction for rape, claimed to have been accomplished by the use of force.

Prosecutrix was more than 18 years of age. She was a

sister of appellant's wife. Appellant was running a restaurant at Bryson in Jack County. Prosecutrix had been working for him about two months, and living in the home of appellant and her sister. In July, 1935, appellant's wife went on a visit to her father and mother in Oklahoma, leaving on Sunday. Prosecutrix's story is as follows: She worked in the restaurant until about ten-thirty o'clock on Sunday night, and then went to her room and retired; about an hour later she was awakened by appellant, who had her by the hand and insisted that she come to his room and sleep with him. She demurred; he pulled her into his room, pushed her over on the bed and had intercourse with her without her consent, and in spite of resistance on her part. She claimed this to have been the first act of intercourse she had ever experienced, and while it caused her some pain, there was no blood. She made no complaint the next day (Monday), but worked with appellant in the restaurant as usual and that night slept in the same house with him again. She also worked on Tuesday and again slept in the house with appellant that night. Appellant did not bother her on Monday or Tuesday nights. She worked Wednesday morning, but that evening went to Graham with a married man,—she, however, claiming not to know he was married,— they got back that night about eleven o'clock and found the door locked; she claims appellant told her if she did not agree to sleep with him he would lock her out, which he did, and put some of her clothes on the outside of the house. Prosecutrix made no report of the alleged rape until nine days after it is supposed to have occurred. She claims not to have known anyone in Bryson, except casually, and was ashamed to let it be known what had happened. Prosecutrix claimed that appellant got some battery acid about the 18th of July and poured it on her wearing apparel, thereby ruining it. This part of her story finds some corroboration in the evidence, otherwise, there is none.

On July 22nd, nine days after the supposed rape, prosecutrix went to Mr. Moore, Justice of the Peace, and lodged a complaint against appellant. Mr. Moore (a State's witness) gave evidence regarding the matter as follows:

"I saw this girl, Murlene Radican, about the 23rd of July, this year. I saw her July 22nd and July 23rd both. On the 22nd she came to my office to find out from me if there is any way in the world a person can collect damages for anyone pouring acid on their clothes, and she had the clothes with her. She said she didn't know anywhere else to go, except to go to

the law about it. She said Gray had poured acid on her clothes and he had destroyed her clothes and that he owed her for three days' work, and she finally said he had insulted her. I did not that day ask her what he had done to her. At that time she wanted me to see what could be done about making Gray pay her for the clothes he had damaged. I went to see Mr. Gray with reference to that matter. I told Gray that Murlene had been down to my house and told me he had destroyed her clothes with acid and that he was in debt to her for three days' work. I told Mr. Gray I had come to him as a friend and to keep things out of court to see if he couldn't make settlement with Murlene on this proposition. The proposition referred to his destroying her clothes and for the three days' pay for her work, she claimed. She said she had been locked out of Mr. Gray's house by Mr. Gray and she didn't know what she was to do. She said she didn't have any clothes except what she had on. At that time I got no further details. She said she had other matters she could tell me. She did not authorize or direct me to make any other demand on him than pay for her clothes and three days' work. I did not try to collect $500.00 from Mr. Gray. He did not make settlement with her for those clothes. Murlene told me that evening to tell Eli (Gray) if he didn't replace her clothes and pay her for this three days' work she told me to tell him if he didn't do these things by five o'clock the next evening she was going to make a complaint against him and would renew on the other complaint. I told Mr. Gray this. She told me to tell him if he would pay her for the clothes and the three days' work she would leave Bryson. The next day she told me about his mistreating her. The next day she made a complaint to me about his raping her. I took a complaint from her. * * * On July 22nd I told Mr. Gray about this girl claiming he owed her for three days' work, and that he had burned up her clothes. She showed me the clothes. And she asked me to go see Gray about his paying for the clothes. Up to that time she had not told me she had been raped. That is all she told me of up to that time. I took the proposition to him. * * * The girl said to tell Gray if he didn't pay her she would tell about the rape."

Prosecutrix's evidence regarding her interview with Moore corresponds with his version of the matter. When Mr. Moore presented prosecutrix's proposition to appellant he denied owing her anything and refused to pay for the clothes.

A letter postmarked July 24th, written by prosecutrix to

her mother, was put in evidence by the State. In part, it reads:

"* * * Lela left Sunday morning. At closing up time Eli (Gray) came out to the house, woke me up, took me in his room and by force he raped me. The next two *nites* nothing happened. Then Wed. nite he locked the house and said I could either be nice to him or he'd lock me out. I told him I'd stay outside. He said anyway I could treat you wouldn't be half as bad as you're treating me, letting me suffer like I am when you could help me. I told him I would not be a 2nd wife to no man and I also ask him why didn't he keep his wife here if he had to have a woman. You may wonder why I didn't turn him in on Monday. The reason is he threatened me every way, and also I couldn't think of having anything like that out on me. I know you'd understand. Well, I took it to the law here and tried to keep it out of court if he'd pay off so much. In fact, enough to buy me a few clothes and enough to pay my way somewhere and enough to pay for my room and board till I could find a job, but he would listen to nothing. Said he would pay nothing. Another thing, I had just ordered some new clothes and sent Ruth all the old ones. Eli (Gray) got some battery acid and poured on everything except the work dress I had on and my oldest slip I had on and some domestic step-ins. So you see how dirty he did. The citizens demanded me to ask $500.00 at the least and they said if I left without him doing it they'd have me brought back and force him to."

On the trial appellant denied entering the room of prosecutrix on the night of the alleged rape, and testified that he never raped her or made any improper advances to her, and denounced the charge as a "frame-up." He also testified that on the Wednesday night when prosecutrix went out with the married man he (appellant) paid her what he owed her and told her to take her clothes with her, and thought she had done so until later; that he put them in a box and set it out on the porch; that he did not intentionally pour acid on her clothes, but had prior to that time put some in the box, but had forgotten that he had done so at the time he put the clothes in the box.

The record presents an unusual situation in this: Witnesses in the town of Bryson where the rape is supposed to have occurred, and who had known prosecutrix for only a few weeks, testified that her reputation for truth and veracity was good. On the other hand, her own father and an unmarried

sister testified that it was bad. The father asserted that she was "unruly and didn't pay any attention to what me and her mother said."

Waiving any defensive testimony, and considering the case alone from the State's evidence, we are constrained to hold a conviction for rape is not supported. Many cases will be found annotated under Section 1784, page 1002, Branch's Ann. Texas P. C., supporting the proposition that a conviction for rape by force will not be sustained on the uncorroborated testimony of a woman who waits too long before announcing her decision that she has been raped, unless the delay is supported by more cogent reasons than are suggested in the present record. Among the cases cited are Price v. State, 36 Texas Crim. Rep., 144, 35 S. W., 988. See also Davis v. State, 100 Texas Crim. Rep., 617, 272 S. W., 480; Anderson v. State, 100 Texas Crim. Rep., 562, 272 S. W., 172; Perkins v. State, 76 S. W. (2d) 135. The record drives us to the irresistible conclusion that if appellant had responded to the demand of prosecutrix to compensate her for clothes burned by acid and some few days pay claimed by her this rape case would never have been heard of.

Her primary purpose in going to the officers even when she did go was not to report outraged virtue, but to demand money compensation. The report of rape seems to have been prompted by chagrin at the failure to collect.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*